ORIGINAL

SEP 14 2023 PM1:51

FILED USDC-NDTX-FW

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

Office of the Clerk

Jerry Just Jerry
Plaintiff

v.

4-23CV-948-P

Civil Action No.

Texas Department of Criminal Justice-Parole Div
Defendant

## COMPLAINT

See Attach Documents

\* Attach additional pages as needed.

Date    Sept 14, 2023

Signature

Print Name    Jerry Just Jerry

Address    2003 8th Ave #14

City, State, Zip    Fort Worth, Texas 76110

Telephone    817-703-1512

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

Jerry Just Jerry
2003 8th Ave # 14
Fort Worth, Texas 76110
Plaintiff,

**4 - 23 C V - 9 4 8 - P**

Case No._____

VS.

COMPLAINT

Texas Department of Criminal Justice
Parole Division
Region II Director's Office
(Ft Worth II District Parole Office)
1010 Cadiz, Ste 204-B
Dallas, Texas 75215
Defendant,

I. JURISDICTION

Subject matter jurisdiction is invoked under employment discrimination under Title VII, Civil Rights Act of 1964, as amended, 42 U.S.C.§§ 2000e, *et seq*.

II.    OCCURRENCE DATE

July 24, 2022

III.    PARTIES

Plaintiff:

A.    Jerry J. Jerry a citizen of Fort Worth, Texas, 76110 who resides at 2003 8th Avenue # 14, alleges that his civil rights were violated by the individual(s) named below.

Defendant #1:

B.    Lanica Fricks is employed as a Parole Officer

Defendant # 2:

C.    Rontoyia Garrett is employed as a Parole Supervisor

IV.    The Sexual Harassment occurred at the Fort Worth II District Parole Office
        4836 Carey Street, Fort Worth, Texas 76119

1

V.

On June 24, 2022, at 10:06 pm I (Jerry J. Jerry) texted my Unit Supervisor Kelley Simon and asked if she was, okay? She replied "Yes" I replied, Kool, and that something happened to me today on the job that I really should have told you about immediately. Will need to talk to you on Monday. My apologies for texting so late. Praying for you and your situation. Feel better because you're an awesome person with a super good heart.[1] PD-13 Procedures section A. (1) state that Prompt Reporting is an effective means of eliminating sexual harassment and discourteous conduct of a sexual nature.[2] On Monday, June 27, 2022, at 6:49 am I sent my Unit Supervisor Kelley Simon an email titled Willful Misconduct. I stated that on Friday June 24, 2022, between 9:00 and 11:00am I experienced discourteous conduct of a sexual nature twice in one day from Parole officer Lanica Frick's. Fricks and I were walking down the main office corridor which is between the office lunchroom and Parole Supervisor Rontoyia Garrett office on the left and Parole officers' cubicles on the right. Fricks was walking behind me when I felt her use her right hand intentionally in a stimulating sexual motion touching my upper and lower back. Frick's unwelcome touch ended with her sexually rubbing, sensually scratching and fore-pleasure digging her manicured almond shaped nails into the center of my back.[3] Offended I walked faster down the corridor however, Frick's matched my walking speed. During, Parole Officer Training Academy (POTA) I learned that one of the signs of an assailant attack is when they match your walking speed[4]. Before getting to the end of the corridor I turned around and gave Frick's a disapproving glance as she immediately disappeared into her cubicle. Appalled, and horrified by what just happened, I returned to my cubicle.

On Friday June 24, 2022, between the hours of 12:00 and 2:00pm Fricks committed a second sexual harassment and discourteous conduct of a sexual nature act upon me. Parole officer Vencent Gardener had a scheduled Parole Administrative Hearing in his 6x6 cubicle. Gardener was actively training a newly hired

---

[1] Exhibit 1, Copy of iPhone text message from Jerry Jerry to Kelley Simon.
[2] Exhibit 2, TDCJ PD-13, September 1, 2021, Sexual Harassment and Discourteous Conduct of A Sexual Nature, p.6.
[3] Exhibit 3, June 27, 2022 (Monday @6:49 AM), Willful Misconduct email from Jerry Jerry to Kelley Simon.
[4] Exhibit 4, July 17,2022 (Sunday @ 4:24 AM), Test 1- POTA Flashcards/Quizlet,
https://quizlet.com/585642536/test-1-pota-flash-cards .

pre-POTA parole officer Willesha Paige. I asked if I could observe the Parole Administrative hearing and Gardener replied yes. The cubicle was too small to accommodate three office chairs therefore I stood in the cubicle entrance behind Willesha Paige's chair. The Administrative hearing ended quickly, and Gardener was instructing Paige and I on the proper language to use during a hearing. Fricks appeared as we stood side by side facing the entrance of the cubicle. Within seconds Fricks turned her entire body with her upper torso region facing my right arm and began to firmly press her breasts and lower body against my right arm. I immediately moved away from her and Fricks asked loudly "Why! Did I move?" Deeply humiliated and emasculated as I noticed the wide-eyed open mouth aghast look on Gardener's face.[5] I had no reply, and because engaging in a verbal altercation with another employee was against POTA Rule and Regulations.[6] Fricks deliberately covered her aggressive sexual assault by asking Gardener if he had anything sweet to snack on. Gardener stated yes and pointed to an overhead cabinet upon which Willesha Paige, and I had to move for Fricks to open the overhead cabinet. Once Fricks retrieved the Oreo's she asked Paige and I if we wanted any. Both of us said no, as Fricks and I went back to our own cubicles. At the end of the day, I walked down the main corridor to tell everyone goodbye. I perceived from Frick's non-verbal facial expression that she knew. I was going to report the fact that her explicit sexual assault wreaked of implicit sexual intent. Fricks asked me what I would be doing this weekend. I replied, getting ready to spend the week in Austin and quickly departed.

On Monday June 27, 2022, at 6:49 am I sent my Unit Supervisor (US) Kelley Simon an email of my sexual harassment and discourteous conduct of a sexual nature allegations against Fricks. My intentions were fully expressed in the last paragraph of this email.[7] I forgave but was unable to forget that my coworker committed sexual assault in the workplace. My expectation was that our Parole Supervisor (PS) Garrett would summon Fricks and myself into her office and perform the duties listed in her job descriptions. Some are to (1) perform advanced parole administration and supervision work, (2) supervise

---

[5] See Id, Exhibit 3.
[6] Exhibit 6, Parole Officer Training Academy Rules and Regulations Power point, Rule 18.
[7] See Id, Exhibit 3, Last paragraph, p2.

the work of others, (3) ensure compliance with agency policies, procedures standards and objectives.[8]
Texas Department of Criminal Justice (TDCJ) PD-13 Supersedes, "Sexual Harassment and Discourteous
Conduct of a Sexual Nature (rev. 8), Dated January 1, 2021. States TDCJ has zero tolerance for all forms
of gender discrimination, to include sexual harassment, and prohibits discourteous conduct of a sexual
nature.[9] Retaliation for opposing or reporting discrimination, or for association with someone who has
opposed or reported discrimination, is prohibited.[10] Texas Department of Criminal Justice (TDCJ) PD-22,
"General Rules of Conduct and Disciplinary Action Guidelines for Employees" (rev. 17), dated
November 1, 2021. Which was prepared by Human Resources Support Operations. "Expects TDCJ
employees to adhere to high standards of conduct while on or off duty "including adherence to the rules
published and described in PD-22.[11] TDCJ PD-22 also states that TDCJ has zero tolerance for all forms of
employment discrimination and retaliation for opposing or reporting employment discrimination.[12] Part
one of PD - 22 further states that "Employees Responsibility is to know these Rules and Regulation."
Also "it is an employee's responsibility to know the rules in this directive and to seek clarification, if
necessary. And being unaware of the existence of any of the rules is not a defense for violations."[13] The
Parole Officer IV- Parole Supervisor position minimum qualifications are education (Bachelor's degree
from an accredited university), experience (Parole officer preferred), and training (all Parole officers have
to pass four POTA exams with an 80% are higher score).[14] Parole Supervisor knowledge and skills
requires them to (1) know, interpret and apply state and federal laws, rules, regulations, and statutes
accordingly (2) to have problem-solving techniques (3) and to supervise the work of others. I presumed I
had excellent rapport with PS Garrett as we attended the same alma mater.[15] And as a newly hired parole

---

[8] Exhibit 8, Hinojosa, R., Texas Department of Criminal Justice Job Description-Parole Officer IV-Parole Supervisor
051139, January 19, 2022, p1.
[9] Exhibit 9, TDCJ Executive Directive PD-13, Policy section first paragraph, p1, September 1, 2021.
[10] Exhibit 10, Human Resources, TDCJ PD-22, Rules 53 Retaliation, p17, November 1, 2021.
[11] Exhibit 11, Human Resources, TDCJ PD-22, Policy section, p1.
[12] Exhibit 12, Human Resources, TDCJ PD-22, Policy section, p1.
[13] Exhibit 13, Human Resources, TDCJ PD-22, Discussion section, p1.
[14] Exhibit 14, Parole Officer Training Academy Rules and Regulations Power point, Rule 4.
[15] Exhibit 15, Hinojosa, R., Texas Department of Criminal Justice Job Description-Parole Officer IV-Parole Supervisor
051139, January 19, 2022, p2.

officer I would often stop by her office and express my job enthusiasm. I could not discuss this issue during the week because I attended Parole Officer(s) Training Academy in Austin, Texas from June 28, 2022, until June 30, 2022.

After a long Fourth of July weekend, I reported to the Fort Worth II District Parole Office for Field week. From July 5, 2022, until July 8, 2022, I was bombarded with death stares, eye rolls, and given the silent treatment especially by PS Garrett's and her FTW II office cohorts (Micah, Gardener, Henderson and Fricks). I set up my company issued computer in my cubicle and went online for our first Field week course. The course started at 8am as I reported to work early enough to greet the Parole officers I trained under the previous week. When I entered Fricks cubicle entrance she angrily told me to get out of her cubicle. I stood in the entrance for a moment in shock by her hostility. Willesha Paige (potential witness) was sitting inside Fricks cubicle. When Fricks stated a second time in an (incriminating demeanor explicitly indicating that she knew of my sexual harassment and discourteous conduct of a sexual nature allegations) for me to leave her cubicle and never enter her cubicle again. I immediately exited Fricks cubicle.[16] US Simon, PS Garrett and I were the only ones who knew of my sexual harassment and discourteous conduct of a sexual nature allegations email. On, the way to my cubicle, I knocked on US Kelley Simon's office and asked if we could talk. I asked if she had received and read my email. US Simon's stated yes! And that she follows the chain of command and forwarded my sexual harassment and discourteous conduct of a sexual nature email to Parole Supervisor Rontoyia Garrett. US Simon also stated that she witnessed PS Garrett show Fricks via her (Garrett's) computer my sexual harassment and discourteous conduct of a sexual nature email. PS Garrett and US Simon fail to follow PD-22 Failure to Report rule 53 policies and procedures.[17] US Simon, and PO Fricks had a meeting in Frick's Unit Supervisor Andrew Isom office. US Simon stated that Fricks cried loudly about not sexually harassing or committing a discourteous act of a sexual nature upon me. US Simon stated that US Isom stated that he did not believe that a female was capable of sexually harassing a

---

[16] Exhibit 16, Official Investigation submitted to TDCJ Investigator Brandi Allums, EEO Case 22003246, August 10, 2022, p3.
[17] Exhibit 17, Human Resources, Texas Department of Criminal Justice PD-22, "*General Rules of Conduct and Disciplinary Action Guidelines for Employees Rule* 53," p 17, November 1, 2021.

5

male. US Isom also fails to follow PD-22 Failure to Report rule 53 policies and procedures.[18] During a

conversation in my cubicle with US Simon, and PO Tatum. PO Tatum apprised US Simon of the fact that

she did not have to tell PS Garrett about the sexual harassment and discourteous conduct of a sexual nature

email. All US Simon needed to do was forward the email to TDCJ's Employee Relations department.

Because there are no secrets within the FTW II office US Tatum assumed Gardener was the alleged sexual

harasser as he has been accused of sexual harassment and discourteous conduct of a sexual nature in the

past. I was having a severe anxiety attack from being alienated and having to work in a hostile retaliatory

environment. Therefore, on July 5, 2022, at 3:47pm I emailed my Veteran Administration psychologist

Heather Wolf to set-up a psychotherapy session.[19]

I equate working in a hostile work environment to suicidal ideation. Both place a tremendous amount of

physical, emotional, and psychological stress upon a person, and you do not know the outcome unless you

pull the trigger. Parole Supervisor Garrett has nine plus years of seniority. Unit Supervisor(s) Simon has 15

plus, and Isom has 5 plus years working for TDCJ. Combined that is 29 years and counting. All previously

have been parole officers and have attended POTA, and TDCJ's continued training courses. Enough to

know PD-13 (and PD- 22) protocol which requires them to contact "Employee Relation Intake via

telephone, fax, or email within 72 hours of becoming aware of any alleged conduct that may be prohibited

by this directive."[20] PD-13 also requires immediate Supervisors, Wardens, or Department heads (a) take-

action; (b) refer individual to Employee Relations Intake, and (c) inform the intake officer of the referral

when reporting the incident. "Regardless of whether written verification was received from a higher level

of authority."[21] Even if I wanted the allegations "kept confidential and no actions taken" PD-13 Supervisor,

Warden, or Department Head Responsibilities section require them to apply the rules listed in section B-

---

[18] Exhibit 18, Human Resources, Texas Department of Criminal Justice PD-22, "*General Rules of Conduct and Disciplinary Action Guidelines for Employees Rule* 53," p 17, November 1, 2021.
[19] Exhibit 19, Email to Heather Wolf, Tuesday July 5, 2022, 3:47 PM.
[20] Exhibit 20, TDCJ PD- 13 Executive Directive, Sexual Harassment and Discourteous Conduct of a Sexual Nature, B-1 p8, September 1, 2021.
[21] Exhibit 20, TDCJ PD- 13 Executive Directive, Sexual Harassment and Discourteous Conduct of a Sexual Nature, B-2 p8, September 1, 2021.

5.[22] None of which was done regarding my sexual harassment and discourteous conduct of a sexual nature allegations. PD-13 directive also gives examples of what discourteous conduct of a sexual nature are: (1) intentional touching, (2) jabbing, (3) pinching, (4) grabbing, (5) rubbing, (6) pressing, (7) or brushing against a person's body. As these types of intentional physical conduct are considered offensive to a reasonable person. And all provide a probable cause level of proof and belief that an offense was committed. PD-13 also states that this "conduct of a sexual nature may be offensive or unwelcomed even if another employee or other individual does not openly object to it."[23] PD-22 (Sec 53) further states what failing to Report Alleged Acts of Discrimination or Harassment Against Persons of a Protected Class, Discourteous Conduct of a Sexual Nature, or Retaliation. And the criteria of these kinds of discrimination or harassment based on (1) 40 years of age or above, (2) Discourteous conduct of a sexual nature; and (3) Retaliation against an individual who (a) reject sexual harassment or discourteous conduct of a sexual nature; (b) has filed a complaint alleging sexual harassment and discourteous conduct of a sexual nature, or other discriminations prohibited by this rule; (c) has cooperated in a TDCJ or external investigation; hearing, or court proceeding; (d) is associated with an individual who in involved in such activity.[24]

How apropos it is for TDCJ's immediate Supervisors, Department heads and Investigators to remind me of agency policies and procedures against retaliation, intimidation, coercion, and witness tampering.[25] PD-13 clearly outline the reason for prompt reporting as an effective way to eliminate sexual harassment and discourteous conduct of a sexual nature.[26] I was vaguely aware of TDCJ's reporting procedures until Anakaren Barrientos, a former FTW II coworker, asked me while we were on a break from POTA training "Why was I depressed?" I only told her that I experience sexual harassment and discourteous conduct of a

---

[22] Exhibit 20, TDCJ PD- 13 Executive Directive, Sexual Harassment and Discourteous Conduct of a Sexual Nature, B-5 p9, September 1, 2021.
[23] Exhibit 20, TDCJ PD- 13 Executive Directive, Sexual Harassment and Discourteous Conduct of a Sexual Nature, Discussion (Prohibition on Sexual Harassment and Discourteous Conduct of a Sexual Nature) section C and C-1 p4, September 1, 2021.
[24] Exhibit 24, Human Resources, TDCJ PD-22, Rules 53 Failure to Report Alleged Acts of Discrimination or Harassment Against Persons of a Protected Class, Discourteous Conduct of a Sexual Nature, or Retaliation, p17, November 1, 2021.
[25] Exhibit 25, Employee Relations Investigator Brandi Allums, Investigation Notification letter, August 10, 2022.
[26] Exhibit 26, Texas Department of Criminal Justice (SHADCOASN) PD-13 Procedures, p6, September 1, 2021.

sexual nature at the FTW II office. Barrientos immediately told me to tell POTA trainer Craig Vannorman. Vannorman told me that now that he is aware of the allegations, he was required to tell his boss Director Williams Griffin.[27] Director Griffin brought me into his office and stated that my sexual harassment and discourteous conduct of a sexual nature was not handled properly and that he would submit it according to TDCJ's policy. Director Griffin asked me to forward the original email that I sent to PS Simon and to write a brief explanation of what took place during FTW II Field week. I forwarded the brief explanation on Wednesday July 13, 2022 @ 5:09 pm.[28] From July 13 thru July 24, 2022, I experienced poor concentration, anxiety, guilt, depression, sleep apnea and was disinterest in normally enjoyed activities. Current sexual harassment and discourteous conduct of a sexual nature allegations were so psychologically severe that it precipitated past PTSD sexual traumas. And render me employment incapacitated enough to file and receive SSI retirement benefits.[29] Overwhelmed with the emotions of harming myself I contacted TDCJ's Alliance Work Partners on July 21, 2022, for mental health consultation.[30] On July 25, 2022, I was separated from POTA for failure to achieve a score of 80% on the 3rd exam.[31] PD-13 states that the Investigation will be "conducted discreetly and fairly for all parties involved."[32]And "prohibits retaliation and providing False Information." Employee Relations Investigator V, Brandi Allums asked me to "Please do not discuss this investigation with anyone to include potential witnesses." "As retaliation, intimidation, coercion, or tampering with a witness is prohibited by Agency policy." I was not afforded the opportunity of discretions. Although I was immediately eligible for re-employment with this Agency in any non-correctional position for which I qualify for.[33] No department head contacted Employee Relation to offer any kind of dispute resolution[34] And the Responding Party declined mediation on or about November 8, 2022.[35] As a matter of

---

[27] Exhibit 27, Texas Department of Criminal Justice (GROCADAGFE) PD-22, #53, p17, November 1, 2021.
[28] Exhibit 28, Email sent to William Griffin, Wednesday, July 13, 2022, at 5:09 PM.
[29] Exhibit 29, Social Security Benefit Verification Letter, April 12, 2023.
[30] Exhibit 30, Alliance Work Partners Informed Consent letter, Created (July 21, 2022), Signed July 27, 2022.
[31] Exhibit 31, TDCJ Trainee Separation Letter, Due to Academy Rule (4) Violation
[32] Exhibit 32, TDCJ PD-13, C. Investigation, 1. General Provisions B (1), p10, September 1, 2021.
[33] Exhibit 33, TDCJ Trainee Separation Letter, Second paragraph, July 25, 2022.
[34] Exhibit 34, TDCJ PD-13 (F) Dispute Resolution, p12.
[35] Exhibit 35, Texas Workforce Commission-Civil Rights Division, Employment Intake Supervisor Alex Stewart Timeline email, July 18, 2023.

fact the only follow up I received from Employee Relation concerning my case was a letter stating that based on the information available, "the facts do not appear to support the allegations and that my case was now considered closed."[36]

I completely understood the fact that the defendant (victim) has the burden of proof. My former coworkers created a retaliatory, intimidating, coercive, and witness tampering mock trial. By turning my sexual harassment and discourteous conduct of a sexual nature allegations into office scandal. Ergo creating a discriminatory and retaliatory hostile work environment by violating my employee rights under Title VII of the Civil Rights Act and Texas Department of Criminal Justice policies and procedures by appointing themselves judges, juries, and executioners. I was issued a Letter of Notice of Right to File Civil Action on Wednesday July 19, 2023.[37]


VI. The relief sought listed in Sec. 21.2585. (D-4) Compensatory and Punitive Damages in the case of respondent that has more than 500 or more employees and Sec. 21. 259. (a) applicable attorney's fees.[38]

---

[36] Exhibit 36, TDCJ Inter-Office Communications, Employee Relations Manager Nalkio Mitchell, October 20, 2022.
[37] Notice of Right to File Civil Action, Wednesday, July 19, 2023,
[38] Labor Code(s), Chapter 21. Employment Discrimination, pp 32-33, August 21, 2022, 2:51pm,
https://statutes.capitol.tecas.gov/docs/LA/htm/LA.21.htm.



| What is the gift of fear? | -Most assaults are NOT random<br>-20% of homicides are committed by strangers<br>-80% are committed by people known to the victim |
|---|---|
| Victimization can result in... | -Anxiety<br>-Burnout<br>-Sense of helplessness<br>-Post traumatic disorder |
| What to do when the offender is agitated and angry? | -Terminate interview if client is intoxicated and/or using drugs<br>-Notify Supervisor<br>-Initiate follow-up contact<br>-Control the interview |
| What are Stress Symptoms? | -115 bpm -> Fine motor skills<br>-145 bpm -> Complex<br>-175 bpm -> Everything else |
| What are the signs of an assailant? | -Survellance Point: He can see you, you cant see him.<br>-Following you: Profiling possible victims, are they an easy target?<br>-Matching your walking speed: Avoid or confront those who match your walking speed<br>-Ambush point with low visibility: Alley,Large dumpster, between parked cars etc<br>-Intrusion of your personal zone: Personal safety zone is usually 3 ft |

ع ى



# In Short.............

- All trainees are expected to adhere to the highest standards of professionalism and integrity. All trainees shall comply with all instructions issued by Academy staff and facility personnel.

Rev. 11

17

# More Rules and Regs

16. Failure to comply with dormitory or visitation rules
17. Use of profane or abusive language
18. Verbal altercation with another employee
19. Substandard Duty Performance  Σ 6

Rev. 11

18

Texas A&M University Mail - Willful Misconduct

Jerry Jerry <jjj1961@tamu.edu>

## Willful Misconduct
3 messages

Jerry Jerry <jjj1961@tamu.edu>                          Mon, Jun 27, 2022 at 6:49 AM
To: kelley.simon@tdcj.texas.gov, Jerry Jerry <jjj1961@tamu.edu>

Dear Unit Supervisor Kelley Simon:

On Friday Jun 24, 2022 between 9:00 am and 11:00 am I was sexually harassed by Ms. Fricks. Her willful misconduct of an employee upon another employee came without warning and was unwelcomed.



The first willful misconduct of an employee upon another employee occurred when I was walking down the main office corridor which is adjacent to the first row of cubicles and the kitchen area. Ms. Fricks was walking behind me when I felt her sensually caressing my back with her fingernails. I felt violated by her action however I did not give way to any afterthoughts.

The second willful misconduct of an employee upon another employee occurred when I was attending an impromptu meeting about parole administrative hearing in Vencent Gardener's cubicle. I was standing behind another female employee chair who was sitting with her back to me. And Mr. Gardener had a full view of the opening to his cubicle. At the completion of the meeting Ms. Frick came and stood on my right side and proceeded to non- consensually firmly press her breasts and upper torso region blatantly against my right arm and slowly bend down. I was shocked and appalled by her actions that I did not know what to do but put space in-between me and her.

I label Ms. Fricks actions as blatant because she had the unmitigated gall to ask me why I moved. If this action was not blatant, why would she ask why I moved. Also, if these actions were reversed, they would equate to me non- consensually sexually caressing her back with my hand, and firmly pressing my private area up against her right arm. I am not sure what I said or did to provoke this kind of behavior from her or suggest in any way that I consented.

Ms. Fricks actions were unprofessional, and unwelcomed. And I as well as Ms. Fricks are fully aware of the fact that TDCJ has a zero tolerance for all and any forms of harassment. I would like this email to represent the fact that I Jerry J. Jerry brought these issues to my Unit Supervisor Mrs. Kelley Simon's attention on June 24, 2022 via a text message and on June 27, 2022 via a written email complaint.

Ms. Fricks and I are in the position to make differences in other people's lives'. However, if we don't practice respect and forgiveness for our fellow employees then

we are less than human. I forgive but, I cannot forget Ms. Fricks willful actions. Going forward if Ms. Frick are any other TDCJ employee who commits a willful misconduct act[s] upon me. I will notify and file a complaint with the proper authorities within TDCJ and the EEOC.

*Ɛ 7*

---

**Jerry Jerry** <jjj1961@tamu.edu>                                    Tue, Jul 5, 2022 at 3:47 PM
To: heather.wolf@va.gov

I got the job I wanted working for the State of Texas as a parole officer. Going to school now. Have to pass 4 difference test. Last week I was working in my local office and the below incident happen to me. Reported it to my unit supervisor. Went to Austin last week, back in Ft Worth this week. Back to Austin next week for 6 weeks of training. The mood in the office as far as Ms. Fricks and her running buddies is icy. Someone or The unit supervisor had a talk with her and she told her friends now there acting shady. What this women did to me was nasty. I couldn't believe she did that and she has been working here for 4 years. Parole officers have strict rules about sexual misconduct in the workplace . I feel somewhat sad that I to write this letter, however I'm sick and tired of willfully women pushing up on me in this way. Just wanting to know if I handled this situation correctly. And just get some feedback. Other than this I'm doing great.

[Quoted text hidden]

*Ɛ 19*

---

**Jerry Jerry** <jjj1961@tamu.edu>                                    Wed, Jul 13, 2022 at 5:09 PM
To: William.Griffin@tdcj.texas.gov

Hello Mr. Griffin
Per our conversation here is the email that I forwarded to my US on Monday, June 27, 2022.
I spoke to my US today during my lunch break and relayed to her that I felt the tension between me and Ms. Frick's (as she told me to not enter her cubicle ) and several other PO in the Ft Worth 2 office. My US told me that she wanted to follow the Chain of Command so she forwarded this email to the PS and the PS forwarded it to Ms. Frick's. And Ms. Frick's told everyone in the FW2 office as no one would speak to me throughout my field week at FW2, as you could cut the tension in the office with a knife. If you need any further information please let me know.

Best regards
JjJ

*Ɛ 28*

---------- Forwarded message ----------
From: **Jerry Jerry** <jjj1961@tamu.edu>
Date: Mon, Jun 27, 2022 at 6:49 AM
Subject: Willful Misconduct
To: <kelley.simon@tdcj.texas.gov>, Jerry Jerry <jjj1961@tamu.edu>

[Quoted text hidden]

# Rule Violation

- Demerit/separation per listing

- Progressive

- Trainee allowed comment

- Demerit/separation-can not grieve

Rev. 11

9

# POTA Rules and Regulations

1. Accumulation of 4 demerits — Sep
2. Cheating — Sep
3. Consensual sexual conduct on State property with a coworker or staff member other than the trainee's spouse — Sep
4. Failure to achieve a score of 80% on each test

E 1X

Rev. 11

10

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## JOB DESCRIPTION

**POSITION TITLE:**  PAROLE OFFICER IV - Parole Supervisor

**SALARY GROUP:**  B19

**DEPARTMENT:**  Parole Division

Page 1 of 3

**CERTIFICATION:**  I certify that, to my knowledge, this is an accurate and complete description of the essential functions and the conditions required for this position.

**APPROVED BY:**  Rene Hinojosa                **DATE:**  01/19/2022

**POSITION #:**  051139

## I. . JOB SUMMARY

Performs advanced parole administration and supervision work. Work involves reviewing and approving parole supervision activities, parole investigations, and parole release plans and reports; coordinating case assignments; conducting case analyses; and supervising the work of others. Works under limited supervision with considerable latitude for the use of initiative and independent judgment.

## II. ESSENTIAL FUNCTIONS

A. Plans, schedules, and supervises parole administration activities, ensuring compliance with agency policies, procedures, standards, and objectives; coordinates parole supervision activities with other units, departments, and other entities; develops and implements policies and procedures; and prepares reports and other related documents.

B. Reviews workload statistics, caseload assignments, and case reports; directs parole officers in developing new sources of information and in improving casework techniques; coordinates and conducts parole investigations of highly confidential matters; and directs actions to be taken on specific cases.

C. Supervises activities to monitor offender compliance with the conditions of supervision to include alcohol and drug testing.

D. Performs criminal information searches and retrieval using Texas Department of Public Safety criminal history system access.

E. Supervises the work of others; and provides training and technical guidance to program staff.

* Performs a variety of marginal duties not listed, to be determined and assigned as needed.

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
**JOB DESCRIPTION**

POSITION TITLE:    PAROLE OFFICER IV -
Parole Supervisor

SALARY GROUP:    B19

DEPARTMENT:    Parole Division

Page 2 of 3

III.  MINIMUM QUALIFICATIONS

A.  Education, Experience, and Training

1.  Bachelor's degree from a college or university accredited by an organization recognized by the Council for Higher Education Accreditation (CHEA) or by the United States Department of Education (USDE).  Major course work in Criminal Justice, Counseling, Social Work, Psychology, Sociology, or a related field preferred.

2.  Six years full-time, wage-earning case management or case processing experience in the criminal justice or social services field to include two years in the supervision of employees.

3.  Parole officer experience preferred.

4.  Computer operations experience preferred.

5.  Technical review or program evaluation experience preferred.

6.  Teaching, training, or staff development experience preferred.

7.  Must meet and maintain Texas Risk Assessment System (TRAS) access eligibility for continued employment in position.

8.  Must have a valid state driver license.

Must maintain valid license(s) for continued employment in position.

*   Must have or be able to obtain a certificate of course completion for the Texas Law Enforcement Telecommunications System (TLETS) policy and procedures training from the Texas Department of Public Safety within six months of employment date.

Must meet and maintain TLETS access eligibility for continued employment in position. For details see: http://www.tdcj.texas.gov/divisions/hr/hr-home/tletseligibility.html

B.  Knowledge and Skills

1.  Knowledge of the principles of criminology and penology.

2.  Knowledge of the principles, methods, techniques, and practices of parole case management.

3.  Knowledge of the psychological concepts of behavior, social adjustment, and emotional stability.

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
**JOB DESCRIPTION**

POSITION TITLE:  PAROLE OFFICER IV -
Parole Supervisor

SALARY GROUP:  B19

DEPARTMENT:  Parole Division

E-15

Page 3 of 3

4. Knowledge of state and federal laws, rules, regulations, and statutes regarding pardons and paroles.

5. Knowledge of agency and departmental organizational structure, policies, procedures, rules, and regulations preferred.

6. Skill to communicate ideas and instructions clearly and concisely.

7. Skill to coordinate with other staff, departments, officials, agencies, organizations, and the public.

8. Skill to interpret and apply rules, regulations, policies, and procedures.

9. Skill to review technical data and prepare technical reports.

10. Skill in problem-solving techniques.

11. Skill to conduct investigations.

12. Skill to plan work in order to meet established guidelines.

13. Skill to train others.

14. Skill to supervise the work of others.

IV. ADDITIONAL REQUIREMENTS WITH OR WITHOUT REASONABLE ACCOMMODATION

A. Ability to walk, stand, sit, kneel, push, stoop, reach above the shoulder, grasp, pull, bend repeatedly, identify colors, hear with aid, see, write, count, read, speak, analyze, alphabetize, lift and carry under 15 lbs., perceive depth, operate a motor vehicle, and operate motor equipment.

B. Conditions include working inside, working around machines with moving parts and moving objects, radiant and electrical energy, chemicals used for urinalysis, working closely with others, working alone, working protracted or irregular hours, and traveling by car, van, bus, and airplane.

C. Equipment (machines, tools, devices) used in performing only the essential functions may include computer and related equipment, calculator, copier, fax machine, urinalyses equipment, firearms, telephone, dolly, and automobile.

Official Investigation

Questions for Jerry J. Jerry

EEO Case # 22003246

**Did both incidents happen on June 24, 2022?**

Yes, both incidents happen on June 24, 2022. On Friday, June 24, 2022, Frick's first sexual harassment (willful misconduct) of an employee upon another employee occurred when we were walking down the main office corridor. Adjacent to the first row of cubicles and the kitchen area. Frick's was walking behind me when I felt her sensually caressing my back with her pointed manicured fingernails. I felt violated by Frick's explicit action. And I perceived Frick's caressing an invasion of my personal space as her touching was perform in a sexually arousing manner.

On Friday, June 24, 2022, Frick's second sexual harassment (willful misconduct) of an employee upon another employee occurred. When I (Jerry Jerry) was attending an impromptu training session about Parole Administrative Hearing in Parole Officer Vencent Gardener's cubicle. I was standing behind another female POTA trainee Willesha Paige who sat with her back to me. Gardener had a full view of the opening to his cubicle. Near the completion of the training, Frick's came and stood on my right side and proceeded to non-consensually firmly press her breasts and upper torso region blatantly against my right arm and slowly bend down. I was shocked and appalled by her actions that I did not know what to do but put space between me and Frick's.

**What was the working relationship between you and the Respondent (Lanica Frick's)?**

Parole Trainer/trainee

**Has the Respondent ever made any sexual remarks or comments to you? Explain.**

Frick's only sexual remark occurred when she asked "why did I move" when she firmly pressed her body up against the right side of my arm.

Frick's only other non-sexual comment/question that a reasonable person would consider having sexual under tones. Was at the end of the day when she asked me what I was doing this weekend.

**Describe "sensually caressed your back with her fingernails?"**

JERRY'S REPLY

Frick's caressed my back with her almond shaped fingernails in a sexually suggestive manner. It felt as if we were in a relationship and Frick's was initiating foreplay.

**Did anyone witness either incident?**
No one to my knowledge witness the sexually suggestive back rub. However, Vencent Gardener had full view of the second incident, and I have no doubt Willesha Paige heard Frick's asked, "why I moved."

Sidebar:
After Frick's question about "why I moved." Frick's asked Gardener if he had anything sweet to eat in his cubicle. Gardener motioned to Frick's that he had a box of Oreos cookies in the cabinet above his desk. Frick's removed a roll of Oreos and asked the other female POTA trainee Willesha Paige and I if we wanted some Oreos. Proof that if Gardener heard Frick's request for something sweet to snack on. Gardener heard her ask "why I moved." As Frick's said it with the same tone in her voice. And this request also places Frick's in Gardener's cubicle. Frick's action was in full view of Gardener. Although Willesha Paige did not visually witness Frick's blatantly rubbing her body against my right arm. Ms. Paige heard Frick's statement about "why I moved" because Paige responded no to Frick's question if she wanted some Oreos.

**Who and which incident do you believe they would have witnessed?**

The unwelcomed sexual harassment of Frick's firmly pressing her breasts and upper torso region blatantly against my right arm and slowly bending down happened in full view of Vencent Gardener.

I was standing behind Willesha Paige's chair in Vencent Gardener's cubicle as I am sure Gardener and Paige heard Frick's ask, "why I moved."

**You stated you reported your complaint to your supervisor, Kelley Simon, on June 24, 2022, and again in writing on June 27, 2022. What specifically did you report at that time?**

My text message on June 24, 2022, stated that "something happened to me today on the job that I really should have told you (her) about immediately. Will need to talk to you (her) on Monday."

**Do you have record of the text and / or email you sent?**

Yes, I have a record of the text message and the email I forwarded on June 27, 2022. It is the same email you are formulating some of these question from.

**What was the supervisor's response?**

JERRY'S REPLY

US Simon replied Okay. And she apologized for me having to experience Frick's sexual harassment.

## Who is the Parole Supervisor you stated forwarded your complaint to the Respondent?

The Parole Supervisor that forwarded my complaint to Frick's was Parole Supervisor Rontoyia Garrett. US Simon told me that she forwarded my email to PS Garrett because she needed to follow the chain of command.

## Do you know what date it was forwarded?

No, Simons did not give me a specific forwarding date; however, I know it happened on or before my POTA field week (July 5 thru 8, 2022) at the Fort Worth 2 DPO. And I only reported the sexual harassment allegation to Simons.

The third sexual harassment incident involves Frick's creating a hostile work environment. Frick's adverse action of a sexual nature created an atmosphere consistence with her unwelcomed sexual advances. On July 5 thru July 8, 2022, I returned to Fort Worth 2 District Parole office. I greeted everyone in the office and got some disdainful eye rolls. When I approached Frick's cubicle and stood in the doorway. The female POTA trainee Willesha Paige was sitting in Frick's cubicle. When Frick's angrily requested twice for me to leave her cubic and never return. I exited Frick's cubicle and began my POTA training promptly at 8 am.

Frick's told everyone at the Fort Worth 2 District Parole office about the sexual harassment allegations. From 8 am to 5 pm, Tuesday thru Friday, July 5 thru 8, 2022 no one in the Fort Worth 2 District Parole office greeted or spoke to me the entire week. However, their eye rolls, death stares and silent spoke volumes. Simon's witness Frick's going into her Unit Supervisor Andrew Isom's office and crying about being innocent of these allegations. The hostility I experience from all the parole officers in the Fort Worth 2 DPO is what prompted me to report the incident to Training Parole officer Craig Van Norman when I returned to the Austin, Texas POTA on July 13, 2022. Van Norman informed me that he was aware of the allegation of someone being sexually harassed at the Fort Worth 2 DPO. Van Norman introduced me to Assistant Training Director William Griffin. Griffin apprised me of the fact that my complaint was handled incorrectly, and that he would properly report the allegations the correct way. Griffin stated that the complaint should have been reported directly to TDCJ EEO office and that he would promptly froward my email by the close of business on July 13, 2022.

Thank you, for taking the time to investigate my sexual harassment allegations. My apologies for taking such a long time to get back to you. Frick's sexual harassment caused severe mental stress, anxiety, loss of sleep, humiliation, and thoughts of suicide. As a result, I needed weekly consultation with a psychologist. My therapy is on-going however, I will do my best to reply to your further correspondence in a timely manner.

Sincerely,
Jerry J. Jerry

JERRY'S REPLY

JERRY'S REPLY



# Texas Department of Criminal Justice

**Bryan Collier**
Executive Director

August 10, 2022

Jerry Jerry
2003 8th Ave. #14
Fort Worth, TX  76110

Re:     EEO # 22003246

Notification of Investigation

Jerry Jerry,

Please be advised that I have been assigned to investigate the EEO complaint you filed against Lanica Fricks. An investigation will be conducted and I will be in contact with you to discuss the allegations in the near future. You will be notified of the results of this investigation once concluded. If you have additional information please notify me. My office hours are 7:30 a.m. to 4:30 p.m., Monday through Friday. Any further questions concerning this matter should be directed to this Investigator.

**Please do not discuss this investigation with anyone to include potential witnesses.** All witnesses, provided by you, that have information relevant to these allegations will be contacted during the course of this investigation. You are reminded that **retaliation, intimidation, coercion or tampering with a witness** is prohibited by Agency policy, and may result in disciplinary action up to and including dismissal.

Sincerely,

*Brandi Allums*

Brandi Allums
Investigator V, Employee Relations
Phone: 936.437.3129
Fax: 936.437.3000
Email: brandi.allums@tdcj.texas.gov

Please sign below verifying that you have received a copy of this notification and return to me.

_____     _____
Employee Signature                   Date



# Social Security Administration
# Benefit Verification Letter

Date: April 12, 2023
BNC#: 23T5584B61989
REF: A

JERRY JUST JERRY
1405 GLEN GARDEN DR
FT WORTH TX  76104-7009

You asked us for information from your record. The information that you requested is shown below. If you want anyone else to have this information, you may send them this letter.

**Information About Current Social Security Benefits**

Beginning February 2023, the full monthly Social Security benefit before any deductions is $1,237.50.

We deduct $0.00 for medical insurance premiums each month.

The regular monthly Social Security payment is $1,237.00.
(We must round down to the whole dollar.)

Social Security benefits for a given month are paid the following month. (For example, Social Security benefits for March are paid in April.)

Your Social Security benefits are paid on or about the third Wednesday of each month.

**Type of Social Security Benefit Information**

You are entitled to monthly retirement benefits.

**Date of Birth Information**

The date of birth shown on our records is January 14, 1961.

**Suspect Social Security Fraud?**

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

See Next Page

23T5584B61989                                                      Page 2 of 2

**If You Have Questions**

**Need more help?**

1. Visit www.ssa.gov for fast, simple and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm.  If you are
   deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this letter
   when you call.
3. You may also call your local office at **1-866-704-4858**.

      SOCIAL SECURITY
      RM 1-A-07 FEDERAL BLDG
      819 TAYLOR ST
      FORT WORTH TX 76102

**How are we doing?**  Go to www.ssa.gov/feedback to tell us.

*Social Security Administration*

Status: EAP Counselling Paperwork: Informed Conse...



EAP Counselling Paperwork: Informed Consent, Grievance Policy a...

**Completed**

EN

Order

Signer #1

Recipient
Jerry Jerry
JerryJerryMedak@gmail.com

Status
**Signed** on Jul 27 2022

Document sent by Intake & Referral (intake@allianceways.com)

Created on Jul 21 2022

Informed Consent, Grievance, SOI.pdf

Pages 3



Download Document



# alliance work partners
A IWAP Program

## INFORMED CONSENT

Before we meet our clients for the first time, we want to make sure that they are fully aware of the scope and limitations of the Alliance Work Partners (AWP). In order to accomplish this, we have prepared the following list of guidelines for your review. After you have had an opportunity to review the items and feel you understand them, **please sign and date the form** and return it to the counselor. Feel free to ask for an explanation of any item which is unclear.

- **Eligibility:** The program is available to all regular employees or union members and members of their household.
- **Voluntary Participation:** The decision to participate in the EAP is voluntary, even though, clients may have been referred to the program by family members, union officials, representatives of management, or the medical department.
- **Confidentiality:** Clients seen by AWP Affiliates should know that client information is sent by the Affiliate to the client's assigned AWP Case Manager to allow for follow-up and quality control. All records pertaining to the client will be treated with a high degree of confidentiality. Information contained in individual AWP files will not be released without the client's authorization, except under a subpoena or court order compelling disclosure. The only other times confidentiality may be broken is under the following circumstances: **(1)** there is a strong indication of child or elderly abuse or neglect, **(2)** there is a strong indication of child sexual abuse, **(3)** the client is found to be **actively** suicidal, or **(4)** there is a strong indication that the client may attempt to commit homicide.
- **Compliance with Work Rules/Standards:** Employees participating in the program should not expect any special privileges or exceptions to normal work rules or performance standards. Participation in the EAP does not waiver the right of any employee to use the grievance procedure within the framework of their existing contractual agreements.
- **Job Security:** Employees seeking help through this program are assured that their job security and promotional opportunities will not be jeopardized solely as a result of a request for help with their problems.
- **Description of Services:** The services offered by AWP include problem assessment, short term counseling, referral, and follow-up. Referrals for these services are made to qualified professional agencies and individuals in the community and financial responsibility for these services shall rest with the client. The number of visits will vary according to contractual arrangements between the employee's agency/organization and AWP. Persons who are dissatisfied with the quality or type of service received from the EAP are encouraged to express their complaint to the Director of Customer Service.
- **Legal Considerations:** AWP services are meant to be short-term, with a problem-solving focus. Counselors are not equipped to provide evaluations for court hearings or to appear in court on your behalf. If you have a need for an evaluation or for someone to speak on your behalf, your counselor will refer you to appropriate individuals who may be of assistance.
- **Weapons:** Weapons of any kind, including guns and knives, are not allowed on AWP premises. Clients who bring weapons to AWP premises will be at risk of losing their EAP services.
- **Missed Appointments:** If you must cancel an appointment please let your counselor know at least 24 hours before the scheduled appointment. **Appointments not canceled with 24 hours' notice will be counted against your total number of sessions allowed.**

## GRIEVANCE

Your records are protected by Health Insurance Portability and Accountability Act (HIPAA), a federal regulation that protects personal health information (PHI). The following exceptions can override protection of PHI:

- The patient consents in writing; or
- Disclosure is required by court order; or
- Personal health information is requested by medical personnel in a medical emergency
- Information is requested by qualified personnel for research, audit, or program evaluation- in which case, we only disclose the minimum information necessary to accomplish the intended purpose; or
- The patient commits or threatens to commit a crime against any person or entity.

You have the right to make a complaint against our staff or our counselors. Complaints can be made with our Call Center Director and are addressed within 24 hours of receipt. If a complaint has not been satisfactorily resolved at this level, it will be escalated to the Executive Office,

then AWP Board of Directors or voluntary mediation.


*Jerry Jerry*                                    Jerry Jerry

**Client or Parent/Guardian Signature:**            **Printed Name of Signatory:**

**Date:**

    Jul 27 2022

**Alliance Work Partners**
**Statement of Understanding  for Telephone Counseling**

We are so glad you've chosen to access services with Alliance Work Partners.  I'd like to give you some information about our organization, telephone counseling, and confidentiality.

First, our organization contracts with your employer to provide telephone counseling to you or anyone in your household; it is provided to you at no cost. Your participation in our program is strictly voluntary; even if it was recommended to you by someone in your organization.  Our counselors are all very experienced, licensed professionals.

There are many ways to gain support for yourself; regardless of the kind of issues you may have. Because your organization has provided this mode of support to you, we hope that you find your experience with AWP helpful.

Telephone counseling is an effective way to:
  (1)  Express your concerns with someone who is *really* listening,
  (2)  Identify and clarify the specific issues,
  (3)  Strategize about the possible choices,
  (4)  Pinpoint possible barriers to achieving your goals, and
  (5)  Provide support for making and sustaining new behaviors and choices.

Through telephone counseling, a number of ideas may be collaboratively brainstormed between you and your counselor.  Some of those action items could include:
  (1)  Action plan for implementation of ideas discussed in your session,
  (2)  Further telephone counseling sessions,
  (3)  Resources for further exploration; e.g., books, articles, websites,
  (4)  Support groups or other community resources in your area,
  (5)  Recommendations for face-to face counseling,
  (6)  Recommendations for specialists that would address your specific needs

As with any type of counseling service, there are some specifics of confidentiality in which we want you to be completely informed.  All information, identity, and records are kept completely confidential. We believe this is a cornerstone of your rights as a client, and work very diligently to ensure that your experience with us feels comfortable and successful.  Please refer to our HIPAA rights form and participant orientation form on our website www.awpnow.com for more information on confidentiality and your rights as a client. Our mailing address is:  2525 Wallingwood Drive, Austin, TX 78746; our fax line is (512) 328-3437.  We also have a 24-hour crisis line that is available after hours that is accessed by calling this same number.

We do not release information to your organization that would in any way identify you.  More specifically, information contained in individual records will not be released without your explicit authorization, except under a subpoena or court order disclosure. The only other times confidentiality may be broken is under the following circumstances:
  (1)  There is a strong indication of child or elderly abuse or neglect, or
  (2)   You are assessed to be actively suicidal or homicidal; e.g., you are feeling like you might carry out either of these acts.
       One other aspect of confidentiality as it relates to telephone counseling is the issue of confidentiality that can only be ensured by you.  It is highly recommended that you find a private setting during the sessions, so that you feel free to really discuss your concerns candidly. Additionally, it is recommended that you use a hard-wired "land line" e.g., not a cell or cordless phone to maintain further precautions of confidentiality.  Due to the potential for counseling to evoke strong emotion, sessions may not be conducted while you are driving.

If any questions arise during your telephone counseling sessions, please feel free to voice your concerns or questions to your counselor.

*Jerry Jerry*                                          Jerry Jerry

**Client or Parent/Guaradian Signature:**              **Printed Name of Signatory:**

**Date:**
        Jul 27 2022



Audit Trail

## Document Details

| | |
|---|---|
| **Title** | EAP Counseling Paperwork: Informed Consent, Grievance Policy and Statement of Understanding |
| **File Name** | Informed Consent, Grievance, SOU.pdf |
| **Document ID** | 8546af9075ee4217b52994f2f77db28a |
| **Fingerprint** | 3d1b6f113127823be055deeca7919b10 |
| **Status** | Completed |

## Document History

| | | |
|---|---|---|
| **Document Created** | Document Created by Intake & Referral (intake@alliancewp.com)<br>Fingerprint: 8d1b6aa5fa22b7d40067029ec5567ca4 | Jul 21 2022<br>08:15PM UTC |
| **Document Sent** | Document Sent to Jerry Jerry (JerryJerryMediallc@gmail.com) | Jul 21 2022<br>08:15PM UTC |
| **Document Viewed** | Document Viewed by Jerry Jerry (JerryJerryMediallc@gmail.com)<br>IP: 71.11.199.98 | Jul 27 2022<br>06:20PM UTC |
| **Document Signed** | Document Signed by Jerry Jerry (JerryJerryMediallc@gmail.com)<br>IP: 71.11.199.98 | Jul 27 2022<br>06:22PM UTC |
| **Document Completed** | This document has been completed.<br>Fingerprint: 3d1b6f113127823be055deeca7919b10 | Jul 27 2022<br>06:22PM UTC |



# Texas Department of Criminal Justice

_____

Bryan Collier
**Executive Director**

## TRAINEE SEPARATION LETTER
## DUE TO ACADEMY RULE VIOLATION

Date: _____ July 25, 2022 _____

Trainee Name: _____ Jerry Jerry _____

Month/Day of Birth (mm/dd): _____ 01/14 _____

Mailing Address: _____ 1405 Glen Garden Drive _____

_____ Fort Worth, TX 76104 _____

RE:  Trainee Separation

Dear **Mr.** / Ms.: _____ Jerry Jerry _____
This correspondence is formal notice that you are being separated from employment effective this date because you were unable to meet the requirements for continued employment with this Agency for the reason cited below:
Reason for trainee separation: <u>PD-33 Rule #4, Failure to achieve a score of 80% on each test, 2nd Violation.</u>

You are eligible to immediately apply for re-employment with this Agency in any non-correctional positions for which you qualify, as long as the position does not require successful completion of the Pre-Service Training Academy, the Parole Officer Entry Level Training Academy or the Office of Inspector General Training Academy. You must wait six (6) months before you are eligible to apply for re-employment or be hired with this Agency in any position requiring successful completion of one (1) of these academies.

You may submit an application for employment in accordance with the guidelines stated above; however, there is no guarantee of an offer for re-employment.  All your qualifications and the reason you were separated from the academy shall be considered.

To apply for re-employment, contact the Employment Section, Texas Department of Criminal Justice, 2 Financial Plaza, Suite #600, Huntsville, Texas 77340-3558.

Sincerely,

William P. Griffin Assistant Academy Director: on behalf of
Academy Director

cc:  Section Director, Employment, TDCJ Human Resources Division
    Section Director, Labor Relations, TDCJ Human Resources Division
    Human Resources Section of the Training Department



**TEXAS A&M**
UNIVERSITY

Jerry Jerry <jjj1961@tamu.edu>

## Jerry J Jerry v Texas Department Of Criminal Justice-Parole Office (TWCCRD#: 1A23115; EEOC#: 31C-2023-00092)

2 messages

Stewart,Alex E <alex.stewart@twc.texas.gov>
To: "jjj1961@tamu.edu" <jjj1961@tamu.edu>

Tue, Jul 18, 2023 at 12:37 PM

**This Message is From an External Sender**
This message came from outside your organization

Good Afternoon,

Since you do not have an attorney listed, I am required to have you confirm the following statements:

1. You are requesting to be issued the Notice of Right to File Civil Action (NRTFCA) for the following case: **Jerry J Jerry v Texas Department Of Criminal Justice-Parole Office (TWCCRD#: 1A23115; EEOC#: 31C-2023-00092)**
2. You understand if the TWCCRD dismisses the case and issues the NRTFCA, neither the TWCCRD or the EEOC will have jurisdiction over the case anymore;
3. You understand you will assume the burden of any and all costs related to any civil action or court costs;
4. You understand once the TWCCRD dismisses the case and issues you the NRTFCA via DocuSign, you will have **60 days** to file any civil action at your own expense;
5. You understand by opting to have the case dismissed and be issued the NRTFCA, you **forfeit the opportunity for the substantial weighted review** (see the general overview bullet '**j 1**' below); and
6. You understand that once the case has been dismissed, neither the TWCCRD or the EEOC will be able to rescind the dismissal and reopen the case if you change your mind.

Below, I am providing you a status update on for the following charge: Jerry J Jerry v Texas Department Of Criminal Justice-Parole Office (TWCCRD#: 1A23115; EEOC#: 31C-2023-00092).

- This Complaint / Inquiry was received on or about 10/06/2022;
- This Charge was perfected (formalized) on or about 10/18/2022;
- The age of this charge is 273 days;
- Responding Party (employer) declined mediation on or about 11/08/2022;
- The position statement (employer's response to the allegations) was received on or about 12/15/2022;
- The 180 Day Letter was issued on or about 04/06/2023, which notified you of your option to withdraw your charge and request the right to file civil action (right to sue) at your own expense;
- Cases are assigned to investigations in the order they were received. At this time, there are 830 cases which must be assigned to an investigator before this one;
- It could be between 12 - 15 months before your case is assigned to investigations. Once assigned, an investigator will contact you to schedule a telephonic interview.
- Once the case has been closed, you may request any records pertaining to the case through TWC's Open Records Division at: Open Records Requests - Texas Workforce Commission.

Below, I am providing you a brief overview of what you can expect from this process as it moves forward. I used to send this to Complainant's when their cases were assigned to me as an investigator.

**Overview of TWCCRD process**

a. The TWCCRD is a neutral administrative investigative agency;

b. Investigators are bound to look solely at evidence and the law;

c. The TWCCRD is not able to overturn previously conducted investigations;

d. After your charge of discrimination has not been investigated within 180 days from the date it was filed, you will be issued a 180 Day Letter notifying you of your option to stop the investigation and request the Notice of Right to File Civil Action (right to sue) at your own expense without a finding attached to the case;

e. Administrative investigators do not make final findings. They make recommendations which are approved by TWCCRD leadership. There are two possible recommendations: "For Cause"; and "No Cause;"

f. You will be asked questions to establish the prima facie elements of each of the alleged harms in your Charge. Each prima facie element must be established for each charge in order to establish a "for cause" finding on each alleged harm;

g. If a "For Cause" recommendation is made, and management approves the recommendation, we then take your case and present it to the Texas Workforce Commission's Commissioners;

h. If the Commission approves the case, we then take your case to the Texas Attorney General (TAG). If the TAG approves the case, they will then take civil action against the Respondent;

i. If a "No Cause" recommendation is made, and management approves, your investigator will contact you to discuss the preliminary determination. If at that time, there is no evidence which could potentially change this recommendation, the case will be closed as a "No Cause";

j. If the case is closed as a No Cause, you will receive notification through DocuSign. Please note that a "No Cause" finding does not necessarily mean that a discriminatory act did not occur, it just means there is no evidence to prove it. Be sure to download this letter because it will provide you a "view receipt". **You will have one of two options at this point based on the date of this receipt**.

> 1). You will have 15 days from notification (based on the view receipt) of the No Cause finding to request a substantial weighted review by the EEOC; or
>
> 2) Within 60 days of notification (based on the DocuSign view receipt) you may retain an attorney at your own expense and file against Respondent in Civil court.
>
> **Again, Please note, you will only be able to select one of these two options**.

V/R,

Alex Stewart

Employment Intake Supervisor

Texas Workforce Commission - Civil Rights Division

101 E. 15th Street, Room 154

Austin, TX  78778-0001

alex.stewart@twc.texas.gov

**Office Hours: 7:00am – 4:00pm**

Join us each quarter starting May 2022 for a FREE informational and interactive webinar about Mediation and Conciliation. In this quarterly session, you will learn how to prepare for your scheduled Mediation or Conciliation session, find out what documentation is needed, the type of resolution to seek and much more!  Plus you will have an opportunity to interact directly with the Mediators!!! Click to Register:

https://forms.office.com/pages/responsepage.aspx?id=Tz99_hsk8UqEqjLFf-
nbA9BJD9jqmONNs7VVJer5EOFUQUhCSEU3UzRFWkNWT041REJBMjhUQTc1Wi4u

**From:** Jerry Jerry <jjj1961@tamu.edu>
**Sent:** Tuesday, July 18, 2023 10:45 AM
**To:** EEO Responses <EEOResponses@twc.texas.gov>; Jerry Jerry <jjj1961@tamu.edu>
**Subject:** Right to Sue Letter

**CAUTION:** Email not from TWC System. Use care when clicking links and opening attachments.

Greeting EEO

My name is Jerry and I received this letter and the attached letter apprising me of my Right to Sue.

I mailed a certified letter to the Austin,Tx address on the letter to Alex Stewart  on May 9, 2023 and I have yet to hear from him, or your office.

Can someone please follow-up and call or email me regarding this matter.

Email address above, (817-703-1512)

Thank you for your time and attention.


Best Regards

JjJ

Texas A&M University Mail - Jerry J Jerry v Texas Department Of Criminal Justice-Parole Office (TWCCRD#: 1A23115; EEOC#: 31C-2023-0...





May 9, 2023

Texas Workforce Commission - Civil Rights Division
101 E 15th Street, Room 154
Austin, Texas 78778-0001
eeoresponses@twc.texas.gov

Dear, Alex Stewart (Employment Intake Supervisor)

I received your 180 days have passed letter.

RE: Jerry J. Jerry vs. Texas Department of Criminal Justice-Parole Office
TWCCRD: 1A23115 / EEOC: 31C-2023-00092.

I (Jerry Just Jerry) would like to request a Notice of Right to File Civil Action in
State Court from TWCCRD and a Notice of Right to Sue in Federal Court from the
U.S. Equal Employment Opportunity Commission. Thank you for your time and
attention.

Kind regards

Jerry J. Jerry

**Texas Workforce Commission.pdf**
349K

**Jerry Jerry** <jjj1961@tamu.edu>
To: "Stewart, Alex E" <alex.stewart@twc.texas.gov>

Wed, Jul 19, 2023 at 9:27 AM

Good Morning Stewart, Alex

Thank you for responding quickly.
I confirm and have reviewed the information above.
I choose option (2) to retain an attorney at my own expense and file against the Respondent in Civil court.
Thank you, for your time and assistance.
And I will be expecting the letter of Right to Sue very soon.

Best regards
JjJ

[Quoted text hidden]

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE

Inter-Office Communications

TO: ___Jerry Jerry_____   DATE: _____October 20, 2022_____
         Complainant

FROM: ___Nalkio Mitchell_____   SUBJECT: ___EEO Intake #22003246_____
         Manager, Employee Relations                     R – Lanica Fricks

The investigation of your complaint alleged sexual harassment and discourteous conduct of a sexual nature by the Respondent has been concluded. Based on the information available, the facts do not appear to support the allegation.

This case is now considered closed.

NM/bh                                    E 36

c:  Lanica Fricks
     EEO File

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE



# Excerpt from PD-22,
## "General Rules of Conduct and Disciplinary Action Guidelines for Employees" (rev. 17)

*November 1, 2021*

Prepared by
Human Resources Support Operations

## INTRODUCTION:

This handbook is an excerpt from PD-22, "General Rules of Conduct and Disciplinary Action Guidelines for Employees." All references to "this directive" refer to PD-22.

If you would like to review PD-22 in its entirety, you may contact your human resources representative. PD-22 is also available on the TDCJ intranet and on the TDCJ website at www.tdcj.texas.gov.

## POLICY:

*E 11*

Employees are representatives of the Texas Department of Criminal Justice (TDCJ) and are expected to adhere to the highest standards of conduct while on-duty or off-duty, including adherence to the rules of conduct as published and described in PD-22, Attachment A, Listing of Employee General Rules of Conduct and Disciplinary Violations. Employees who allegedly commit a rule violation will be subject to disciplinary action in accordance with the procedures within this directive.

The TDCJ promotes equal employment opportunity through an employee disciplinary system designed to impose disciplinary actions without regard to race, color, religion, sex (gender), national origin, age, disability or genetic information (collectively, "protected class"). The TDCJ has a zero tolerance for all forms of employment discrimination in the disciplinary process. Retaliation for opposing or reporting employment discrimination is prohibited.

## EMPLOYMENT AT WILL CLAUSE:

*E 12*

This directive **does not** constitute an employment contract or a guarantee of continued employment. The TDCJ reserves the right to change the provisions of this directive at any time.

Nothing in this directive limits the executive director's authority to establish or revise human resources policy. This directive guides the operations of the TDCJ and **does not** create a legally enforceable interest for employees or limit the executive director's, deputy executive director's, or division directors' authority to terminate any employee at will.

## DISCUSSION:

*E 13*

I.    Employee's Responsibility to Know Rules and Regulations

✗    It is an employee's responsibility to know the rules in this directive and to seek clarification, if necessary. Being unaware of the existence of any of the rules is not a defense for violations.

No single document can anticipate or address every situation. Therefore, an employee should maintain knowledge of other current TDCJ directives and standard operating procedures. In the event no written or verbal instructions have been issued regarding an employee's responsibilities or duties, the employee is expected to use sound judgment in arriving at a prudent course of action.

II.    Corrective Actions Other than Disciplinary Actions
(Content of Section II is not included in this excerpt.)

(11/21)

III.     Grievance of Disciplinary Action

Disciplinary action may be grieved in accordance with PD-30, "Employee Grievance Procedures." Dismissal recommendations or alleged procedural violations in connection with a dismissal recommendation may be grieved only after a final decision is rendered by the executive director, deputy executive director, appropriate division director, or an Equal Employment Opportunity Designated Agency Official (EEO-DAO).

IV.     Actions by Other Agencies or Entities
(Content of Section IV is not included in this excerpt.)

## LISTING OF EMPLOYEE GENERAL RULES OF CONDUCT AND DISCIPLINARY VIOLATIONS

These rules specify the conduct required of a TDCJ employee.

**DEFINITIONS**:

The following definitions apply solely to the rule violations.

"Conviction" is: (a) a finding of guilt by judge or jury and the assessment of punishment, whether confinement or fines; (b) community supervision (probation), including deferred adjudication; (c) a juvenile adjudication of delinquent conduct if the juvenile records are not sealed; and (d) an equivalent disposition of an offense under the laws of another state, federal law, or Uniform Code of Military Justice. The term does not include a pretrial diversion, which is an agreement between the defendant and prosecutor and occurs before a judicial finding, although a judge may approve of the defendant participating in the program. Pardons or reprieves do not eliminate a conviction.

"Discourteous Conduct of a Sexual Nature" is conduct, in words or actions, of a sexual nature toward or witnessed by another TDCJ employee or other individual (see definition for "Other Individual") that: (a) a reasonable person would find offensive; or (b) is unwelcome to the person to whom such conduct is directed and that person has communicated, by words or actions, to the other person that the conduct is unwelcome.

"Discrimination" is unequal treatment of persons based on a protected class, including sexual harassment. Discrimination by employers falls into four general areas: (1) hiring and firing, such as failing or refusing to hire, or discharging; (2) employment conditions, such as compensation, terms, conditions, or privileges; (3) segregation and classification, such as limiting, segregating, or classifying employees in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect their status as an employee; and (4) training, such as unequal access to training that may affect an individual's ability to promote.

"Employee" is any person employed by the TDCJ on a full-time, part-time, or temporary basis.

"Harassment" is systematic or continued unwanted actions, including threats and demands, directed toward an employee or other individual that may create a hostile work environment for the person to whom the acts are directed.

(11/21)

"Hazing" is conduct that intentionally subjects another person to embarrassment, intimidation, or ridicule and risks emotional and/or physical harm.

"Horseplay" is rough or boisterous conduct by an employee for the purpose of amusement, such as running, wrestling, or offensive practical jokes.

"Hostile Work Environment" is offensive behavior that is severe or pervasive enough to alter the victim's employment conditions and create an abusive working environment. All the circumstances shall be considered, including the frequency of the conduct, the severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Isolated instances, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment.

"Marriage" includes "ceremonial marriage" and "informal marriage," which are the two types of marriage recognized by the state of Texas and are defined as follows:

a. "Ceremonial Marriage" is a marriage documented by: (1) a marriage license recorded with a county clerk; and (2) a marriage certificate issued by the county clerk.

b. "Informal Marriage," previously known as common law, is a marriage that is not necessarily documented through a county clerk, but is valid when a couple agree to be married and after that agreement live together in the state of Texas as a married couple and represent to others that they are married.

"Offender" is an individual under the supervision or custody of the TDCJ, including a TDCJ offender housed in privately operated, federal, county, or other states' facilities. These individuals include, but are not limited to, parolees, individuals under mandatory supervision, incarcerated individuals, and individuals housed in county jails that have been sentenced to the TDCJ but are not yet in TDCJ custody.

"Other Individual," for the purpose of Rule Number 5, includes, but is not limited to, a contract employee, applicant, employee of a vendor, intern, or volunteer. For the purpose of Rule Numbers 21, 50, and 53, the definition includes, but is not limited to, a contract employee, applicant, employee of a vendor, intern, or volunteer who reports or is a victim of sexual harassment, discrimination, or discourteous conduct of a sexual nature. This definition does not include an individual under the supervision or custody of the TDCJ.

"Property" is anything owned or leased by the state, such as equipment, land, motor vehicles, or structures.

"Protected Class" is a group of people with a common characteristic who are legally protected from discrimination on the basis of that characteristic. In the general context of equal employment opportunity, the protected classes are race, color, religion, sex (gender), national origin, age, disability, and genetic information.

"Retaliation" is (1) any action that may deter a reasonable person from filing a complaint, participating in a proceeding regarding, or otherwise opposing an alleged EEO rule violation; or (2) any action against an applicant, employee, or other individual because of that person's association with an individual who has engaged in a protected activity. For Rule Number 22, retaliation is any adverse action taken against a person for any reason not supported by TDCJ policy.

(11/21)

"Serious Injury" or "Serious Bodily Injury" is bodily damage that creates substantial risk of death or that causes death, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

"Sexual Harassment" is unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature when: (a) the conduct is sufficiently pervasive or severe that it has the effect of unreasonably interfering with an individual's work performance or creating a work environment that a reasonable person would find intimidating, hostile, or offensive; (b) submission to the conduct is made either explicitly or implicitly a term or condition of an individual's employment; or (c) submission to or rejection of the conduct by an individual is used as a basis for employment decisions affecting the individual.

"Spouse" means a person to whom a person is legally married.

"Use of Force" is a controlling measure taken during a confrontational situation to achieve the compliance of an offender or to maintain a safe and secure environment for offenders and staff.

"Deadly Force" is force intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

"Excessive Force" is the use of more force than is objectively reasonable to accomplish a lawful purpose.

"Non-Provoked Use of Force" is force used absent an action by an offender involving physical assault, attempts at physical harm, an escape attempt, mutiny, rebellion, or serious damage to property.

"Provoked Use of Force" is force used in response to an action by an offender, such as a physical assault or an attempt to physically harm oneself or another, that is necessary to prevent an escape, regain control of an institution, temporarily isolate or confine an offender, prevent serious damage to property or gain compliance with a legal order or policy for which some degree of force is required to defuse the situation. Throwing of liquids, spitting, and other such actions may be considered a provoked use of force situation depending on the circumstances. However, verbal abuse alone will not be considered a provoked use of force situation.

"Unnecessary Force" is the use of force when none is required or appropriate.



EXPLICITLY - IN A WAY THAT IS CLEARLY
    EXPRESSED, DEMONSTRATED OR FORMULATED.
IN A WAY THAT IS DIRECT OR PRECISE.

IMPLICITLY - WITHOUT ACTUALLY SAYING
    SO; IN A WAY THAT HAS ALL YOU
    WORK; WITHOUT QUESTION OR RESERVATION.

## RULE NUMBER, DESCRIPTION, AND VIOLATION LEVEL

1. **Tardiness - Less than One Hour - Violation Level 4:**
   Tardiness is less than one hour of regularly scheduled work missed without authorization. An employee shall report to work at the time specified unless excused by the appropriate supervisor. An employee who is unable to report to work on time shall notify the appropriate supervisor of the estimated time of arrival for duty.

   Generally, tardiness will be handled informally by documenting the occurrence in the employee's PERS 401, TDCJ Employee Performance Log in accordance with PD-52, "Performance Evaluations." Formal disciplinary action may only be initiated for the offense of tardiness only when one of the following occurs: an employee is tardy three times within a rolling six month period; or an employee who has been charged and disciplined for tardiness is tardy again within one year from the date disciplinary action was imposed on the prior violation of tardiness. At the reprimanding authority's discretion, bona fide reasons for excused tardiness, such as unexpected road closings that result in a re-routing of traffic or adverse weather, may be exceptions to the guidelines for formal disciplinary action on a case-by-case basis.

   If an employee misses less than eight minutes of regularly scheduled work without authorization, the employee may be disciplined even though the time is reported as time worked in accordance with PD-91, "Work Cycles and Compensable Hours of Work."

2. **Unexcused Absenteeism - One Hour or More - Violation Level 4:**
   Unexcused absenteeism is one hour or more of regularly scheduled work missed without authorization. An employee shall report to work at the time scheduled unless prior arrangements are made with the appropriate supervisor.

   An employee shall comply with the unit or department written notification "call-in" procedures established and provided to the employee by the warden or department head. As general rules: (a) an employee who cannot report to work as scheduled shall notify the appropriate supervisor in sufficient time to arrange for a replacement; and (b) if the employee is a shift employee who is unable to contact the appropriate supervisor, the employee should provide unit or department staff with at least a two hour notice prior to the beginning of the shift.

3. **Sleeping on Duty - Violation Level 2:**
   An employee shall remain awake, alert, and devote full attention to the employee's assigned duty or area of responsibility during working hours.

4. **Leaving a Security or Duty Post - Violation Level 2:**
   An employee shall not leave the assigned work area without proper authorization. A correctional employee shall not leave the assigned security post until properly relieved.

5. **Reckless Endangerment - See 5a, 5b, and 5c:**
   For mistreatment of offenders, see Rule Number 23.

   5a. **Reckless Endangerment:  Life Endangerment - Violation Level 1:**
       Committing, or threatening to commit, an act while at the workplace that endangers the life of another individual, including hazing or horseplay

**5b.  Reckless Endangerment: Endangerment Less than Life Endangerment - Violation Level 2:**
Committing, or threatening to commit, any act that endangers the safety of another individual to a lesser degree than endangerment of life, including hazing, horseplay, or an action that results in the security of the TDCJ being jeopardized.

**5c.  Reckless Endangerment: Hazing or Horseplay without Injury - Violation Level 3:**
Employees shall not participate in hazing or horseplay.

**6.  Horseplay:**  Voided effective August 1, 2016.  Rule consisted of 6a, violation level 4 and 6b, violation level 3, was incorporated into Rule Number 5.

**7.  Substandard Duty Performance - Violation Level 4:**
An employee shall perform duties in a manner that meets or exceeds the minimum standards established for the employee's position.  Job quality and productivity standards are established by position descriptions, TDCJ policies and procedures, ethical and professional standards, and written or verbal instructions relating to job standards or expectations.  Failure to meet the minimum standards of productivity or quality is prohibited.

The employee's substandard duty performance shall be clearly identified.

**8.  Failure to Follow Proper Safety Procedures - Violation Level 4:**
An employee shall observe and follow current TDCJ policies and state and federal laws relating to safety in the workplace.

The specific safety procedure that was violated shall be clearly identified.

**9.  Gambling on State Property - Violation Level 1:**
Gambling, as defined by the Texas Penal Code, on state property or at any location where offenders are housed or work, is prohibited.

**10.  Falsification of Records - Violation Level 2 - Does not include falsification relating to the State of Texas Application for Employment - See Rule Number 46:**
An employee shall maintain and submit truthful, accurate, and complete records as required by the TDCJ.  Falsification of records includes altering documents to reflect false information or the omission of material information.  By signing or submitting a document, an employee attests to the truthfulness, accuracy, and completeness of the information presented in the document.

**11.  Unauthorized Taking or Use of Personal Property - Violation Level 2:**
An employee shall not take or use any item of personal property not belonging to the employee, without permission from the owner.  This does not include offender property, which is a violation of Rule Number 23.

**12.  Unauthorized Sales or Solicitations on State Premises - Violation Level 4:**
An employee shall not engage in any solicitation or fundraising activity on state property, except as provided in ED-02.04, "TDCJ Fundraising."

13. **Failure to Obey a Proper Order from an Authority - Violation Level 2:**
An employee shall promptly obey any proper order issued by an authority. A proper order is any work-related order in the best interest of the TDCJ issued to an employee by a supervisor or through the employee's chain of supervision. Proper orders include instructions posted on employee bulletin boards.

An employee shall comply with a proper order. The employee may file a grievance after complying with the order. The specific proper order that was not obeyed shall be clearly identified when charging an employee with this violation. Failure to comply with a written policy, procedure, or statutory authority is a violation of Rule Number 20.

14. **Use of Offensive Words or Actions - See 14a, 14b, and 14c:**
Use of words or actions that would offend a reasonable person is prohibited. A gesture, isolated remark, or comment not directed to anyone in particular may be considered a violation of this rule. An employee shall not respond in like terms to offensive or insulting words or conduct.

The specific words or actions shall be clearly identified when charging an employee with this violation.

   14a. **Use of Offensive Words or Actions - Violation Level 3:**
   When words or actions that would not violate Rule Number 14b are used as part of a verbal or physical altercation or an act of insubordination, the employee shall be disciplined in accordance with Rule Number 15 or Rule Number 36.

   14b. **Use of Offensive Words or Actions – Protected Class - Violation Level 2:**
   Use of words or actions that humiliate or show hostility or animosity toward an individual or an individual's relative, friend, or associate, because of race, color, religion, sex (gender), national origin, age (40 or above), disability, or genetic information are a violation of this rule.

   A supervisor shall report conduct that may violate this rule to Employee Relations Intake, Human Resources Division, in accordance with PD-31, "Discrimination in the Workplace." A Rule Number 14b violation shall be supported by an EEO prehearing investigation conducted in accordance with PD-31, and a disciplinary hearing held by an EEO-DAO.

   14c. **Use of Offensive Words or Actions – Protected Class – Toward an Offender - Violation Level 2:**
   This rule applies when the prohibited use of words or actions as defined in Rule Number 14b are directed toward an offender and no employee can be identified as a witness. A violation of this rule does not require an EEO prehearing investigation. If an employee witness is verified during the prehearing investigation or offender grievance process, the reporting requirements of PD-31, "Discrimination in the Workplace," will apply.

15. **Verbal or Physical Confrontation or Altercation with Another Employee - See 15a and 15b:**
While on duty, an employee is required to maintain a considerate, cooperative, and cordial relationship with fellow employees. An employee shall not: (1) instigate a verbal or physical confrontation toward another employee in the workplace; or (2) participate in a verbal or physical altercation with another employee in the workplace, including inappropriately responding to another employee's instigation.

The instigating employee shall be charged if the responding employee is charged. If all of the responding employee's actions are appropriate; only the instigating employee will be charged.

   15a. **Instigating or Participating in a Verbal Confrontation or Altercation - Violation Level 3**

**15b.  Instigating or Participating in a Physical Confrontation or Altercation - Violation Level 2**

**16.  Improper Operation of a TDCJ Vehicle - Violation Level 2:**
An employee shall not operate a state vehicle unless the employee possesses a valid Texas driver license for the applicable class of vehicle.  An employee operating a state vehicle shall operate the vehicle safely, and report promptly and accurately an accident involving the vehicle.  Improper operation of a TDCJ vehicle includes an employee operating a state vehicle outside the scope of the employee's job duties at the time of an accident.

See PD-37, "Employee Commercial Drivers' Physical Examination and Alcohol/Drug Testing Program" for the definition of "Commercial Motor Vehicle."

**17.  Reporting to Work under the Influence of Alcohol or Drugs:**  Voided effective April 1, 1998. Rule was a violation level 2.

**18.  Possession or Removal of Contraband - See 18a, 18b, 18c and 18d:**
An employee shall not remove from TDCJ premises or the premises of a facility operated under a contract with the TDCJ any item of contraband and shall not possess or control of any item of contraband while on TDCJ premises, except as authorized.

Contraband is a specific, tangible item: (1) not issued to an employee for the performance of the employee's duties and which the employee is not authorized to possess, other than items which an employee normally in possesses, such as car keys; (2) not permitted by TDCJ policy, procedure, or practice for an offender or employee to possess, whichever is applicable; or (3) prohibited by law.

A violation of this rule that supports an employee and offender relationship is a violation of Rule Number 42.

**18a.  Possession, Delivery, or Removal of the Following: (1) Alcoholic Beverage; (2) Controlled Substance; or (3) Deadly Weapon without Authorization - Violation Level 1:**
(1) An employee shall not have alcohol in a TDCJ facility or a facility operated under contract with the TDCJ.  Alcohol in a vehicle on CID unit property is a violation of Rule Number 20, in accordance with SM-02.01, "Search of Individuals, Property, and Vehicles."  Alcohol within a bachelor officer quarters (BOQ) violates BOQ rules and should be charged using Rule Number 20.

(2) Controlled Substance:  An employee shall not have an illegal controlled substance on or in a TDCJ facility, or a facility operated under contract with the TDCJ.

(3) Deadly Weapon:  A deadly weapon is a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use, or intended use, is capable of causing death or serious bodily injury.  An employee shall not possess a deadly weapon in a TDCJ facility or a facility operated under contract with the TDCJ, or within a BOQ located on state property.  Employees who store a firearm within a vehicle parked at one of these locations or store a firearm within a residence located on state property shall follow procedures in accordance with AD-02.95, "Storage of Firearms," to be exempt from this rule.

**18b.** **Delivery of the Following to an Offender: (1) Alcoholic Beverage; (2) a Drug Other than an Authorized Controlled Substance for Medical Purposes; (3) Cell Phone, Other Wireless Communication Device, or a Component of One of those Devices; (4) Cigarette or Other Form of Tobacco; or (5) Money - Violation Level 1:**

For the purpose of this rule, delivery includes:  an offender possessing one of these items that can be directly associated with an employee; an employee having possession of large amounts of one of the items; or an employee concealing and of the items in an abnormal place.

**18c.** **Possession of any Contraband Other than Those Items Listed in Rule Number 18a - Violation Level 2**

**18d.** **Trafficking or Trading of any Contraband Other than Those Items Listed in Rule Number 18a or 18b - Violation Level 2:**

An employee shall not accept or agree to accept such contraband from an offender, offer such contraband to an offender, or agree to purchase contraband for an offender.

**19.** **Use of Alcohol or Illicit Drugs on the Job - Violation Level 1:**

An employee shall not use alcohol or illicit drugs while on duty.

**20.** **Violation of Statutory Authority, Court Order, Rules, Regulations, or Policies - Violation Level 2:**

It is the employee's responsibility to know, have a clear understanding of, and comply with rules, regulations, policies, court orders, and statutory authority governing the operation of the TDCJ.  Not being aware of the existence of any of the aforementioned is not a defense to finding a violation.

The specific rule, regulation, policy, or statutory authority shall be clearly identified when charging an employee with this violation.

**21.** **Discrimination or Harassment Against Persons of a Protected Class or Retaliation - Violation Level 1:**

Discrimination or harassment based on race, color, religion, sex (gender), including sexual harassment, national origin, age (40 or above), disability, or genetic information is prohibited.  In addition, an employee shall not retaliate against an employee or other individual who filed a charge of, participated in a proceeding regarding, or otherwise opposed an alleged EEO rule violation, or associated with the applicant, employee, or other individual who is involved in such activity.  Some examples of adverse employment actions that may be retaliation for purposes of this rule are identified in PD-13, "Sexual Harassment and Discourteous Conduct of a Sexual Nature" and PD-31, "Discrimination in the Workplace."

This rule violation shall be supported by an EEO prehearing investigation conducted in accordance with PD-13 or PD-31.

**22.** **Harassing or Retaliating Against Another - Non-EEO related - See 22a and 22b:**

An employee shall not harass or retaliate against another individual in any form or for any reason.

**22a.** **Harassing or Retaliating Against Another Individual - Violation Level 2:**
Includes all forms of harassment or retaliation not prohibited by Rule Number 21 or 22b.

**22b.** **Harassing or Retaliating Against an Offender or Another Individual for Participating in an Official Investigation or Inquiry or for Pursuing Legal Activities, Such as Petitioning the Courts - Violation Level 1**

PD-22 (rev. 17) Excerpt
Page 10 of 23

23. **Mistreatment of Offenders - Violation Level 2:**
   Mistreatment usually takes the form of physical abuse, but may also include such actions as threats or unauthorized denial of privileges or entitlements.

\*24. **Use of Excessive or Unnecessary Force - See 24a, 24b, 24c, and 24d:**
   Existing policies and procedures govern the use of force to control a situation or to gain compliance with legal orders. Employees shall employ only the minimum amount of force applied in compliance with existing policies and necessary to achieve the desired results. The use of force to intimidate, coerce, punish, or for the purpose of revenge is prohibited.

   Violations of the TDCJ *Use of Force Plan* shall be charged as a Rule Number 24 or 25 violation. In addition, the Aggravated Use of Excessive Force Provision may be applicable, included herein after Rule Number 25.

   \*24a. **Use of Excessive or Unnecessary Force - Provoked without Serious Injuries - Violation Level 3**

   \*24b. **Use of Excessive or Unnecessary Force - Provoked with Serious Injuries - Violation Level 2**

   \*24c. **Use of Excessive or Unnecessary Force - Non-Provoked without Serious Injuries - Violation Level 2**

   24d. **Use of Excessive or Unnecessary Force - Non-Provoked with Serious Injuries - Violation Level 1**

\*25. **Failure to Completely or Accurately Report a Use of Force or Commission of a Use of Force Administrative or Procedural Violation - See 25a, 25b, 25c, 25d, 25e, 25g, and 25h:**
   An employee involved in or who is a material witness to a use of force incident shall provide a complete factual account of the employee's actions and observations of the incident as outlined in existing policies and procedures.

   Violations of the TDCJ *Use of Force Plan* shall be charged as a Rule Number 24 or 25 violation. In addition, the Aggravated Use of Excessive Force Provision may be applicable, included herein after Rule Number 25.

   \*25a. **Failure to Report: Relating to Use of Deadly, Excessive, or Unnecessary Force - Provoked without Serious Injuries - Violation Level 3**

   \*25b. **Failure to Report: Relating to Use of Deadly, Excessive, or Unnecessary Force - Provoked with Serious Injuries - Violation Level 2**

   \*25c. **Failure to Report: Relating to Use of Deadly, Excessive, or Unnecessary Force - Non-Provoked without Serious Injuries - Violation Level 2**

   25d. **Failure to Report: Relating to Use of Deadly, Excessive, or Unnecessary Force - Non-Provoked with Serious Injuries - Violation Level 1**

   \*25e. **Failure to Report: Relating to Non-Excessive and Necessary Use of Force - Violation Level 3**

(11/21)

**\*25f.  Administrative or Procedural Violation of a Security Nature Relating to Use of Force:**
Voided effective November 1, 2021.  Rule violation was changed from a Level 2 to a Level 4 and incorporated into Rule Number 25h.

**\*25g.  Administrative or Procedural Violation Relating to Use of Force - Violation Level 3:**
For example, failure to videotape a use of force incident or make an offender notification.

**\*25h.  Administrative or Procedural Violation of a Security Nature or Technical Violation Relating to Use of Force - Violation Level 4:**
For example, failure to follow required security procedures, such as use of mechanical restraints when appropriate or failure to remove lens cap from camera, insert or rewind videotape, or keep offender participant in full view.

**\*Aggravated Use of Excessive Force Provision - Applies to Rule Numbers 24 and 25:**
Aggravated is defined as conduct indicating a deliberate act, without just cause or provocation, by an employee who:

1.  Uses excessive force;

2.  Conspires with another employee who uses excessive force. Conspiracy may include, but is not limited to, the participation in or observation of the use of excessive force or having prior knowledge of an imminent use of excessive force;

3.  Participates in or witnesses a use of excessive force, knows the use of excessive force is aggravated, and fails to report the use of excessive force; or

4.  Witnesses a use of excessive force, does not know the use of excessive force was aggravated at the time the incident occurs, becomes aware the excessive force was aggravated after the incident occurs, and fails to report the use of excessive force or reports the use of excessive force but covers or withholds the fact the excessive force was aggravated.

If a preponderance of evidence substantiates that:

- A violation of Rule Number 24 involved an aggravated use of excessive force; or

- A violation of Rule Number 25 involved: (a) an aggravated failure to completely or accurately report an aggravated use of excessive force; or (b) the commission of a use of force administrative or procedural violation when there was an aggravated use of excessive force.

The disciplinary action imposed shall be based on the guidelines for the next most severe range of disciplinary actions within that level.  For example, if a violation of Rule Number 24 or 25 is the employee's first offense and it is determined that the violation involved an aggravated use of excessive force, the disciplinary action shall be based on the range for a second offense. The disciplinary action imposed shall include, at a minimum, probation and one or more of the following: suspension, reduction in pay, or demotion.

**The reprimanding authority shall make a separate determination of the application of "aggravated" for each individual employee's conduct, as a participant or witness, as it relates to a Rule Number 24 or 25 violation.**

**26.  Refusal to Submit to a Polygraph Examination:**  Voided effective September 1, 1997.  Rule was a violation level 1.

27. **Failure to Turn in all Evidence Seized - Violation Level 3:**

An employee shall preserve and submit all evidence in its original form through an established chain of custody. All confiscated property, contraband, or other such items shall be properly accounted for and secured in accordance with the appropriate division's policy.

28. **Improper or Untidy Uniforms - Violation Level 4:**

A uniformed employee is required to adhere to standards established by TDCJ policy regarding dress and personal appearance while in uniform. Employees shall not wear a uniform during non-working hours, except for convenience stops while traveling to and from work. An employee shall not under any circumstances wear the uniform on the employee's day off or wear only a part of the uniform, such as uniform shirt with jeans or uniform pants with casual shirt. Specific prior authorization may be granted to wear the uniform for official agency representation.

29. **Damage, Destruction, Misappropriation, or Unauthorized Use of Equipment or Property Owned or Leased by the TDCJ - Violation Level 2:**

An employee shall not damage, destroy, or: (1) take or use any TDCJ resources, including the use of offender labor, to further the employee's private interest; (2) take or use any item of state property for the purpose of converting it to the employee's personal use; (3) possess any TDCJ lost or stolen property; or (4) use state equipment for any purpose other than official work purposes, except as provided in ED-02.01, "Texas Department of Criminal Justice Ethics Policy."

30. **Refusal to Cooperate with an Official Inquiry or Investigation - Violation Level 2:**

An employee shall cooperate fully in any investigation involving TDCJ interests conducted by an authorized official of the TDCJ or state or federal government.

Effective August 1, 2006, Rule Number 30 is no longer divided into Rule Numbers 30a and 30b, which differentiated between inquiries or investigations into a court ordered reform issue and inquiries or investigations into other work-related matters.

31. **Conviction of a Felony - Violation Level 1:**

An employee will be disciplined by TDCJ officials upon conviction of a felony offense.

An employee shall report an arrest, charge by information or complaint, or indictment for a felony offense within 48 hours of the initial event and before reporting to duty. If an employee is convicted of a felony offense, the employee shall report the conviction to the employee's immediate supervisor no later than 48 hours from the conviction and before reporting to duty. Failure to report such information is a separate Rule Number 20 violation.

32. **Destroying Evidence or Giving False Testimony or Information - Violation Level 2:**

An employee shall not destroy confiscated property, contraband, or other such items. In administrative processes, an employee shall submit truthful, accurate, and complete information and documentation of events that the employee has knowledge of or has witnessed. Providing a false statement to be granted time off and filing an EEO related complaint that an employee knows is unjustified are violations of this rule.

33. **Release of Confidential Information - Violation Level 2:**

An employee shall not release any confidential information, including confidential information relating to employees or offenders, except as permitted by TDCJ policy or state or federal law. This rule applies to disclosure to persons outside the TDCJ as well as persons within the TDCJ who do not have a right to have such information.

34. **Accepting Goods, Money, Services, or Favors - See 34a and 34b:**

An employee shall not: (1) grant special favors to or ask for or accept gratuities, whether in property or service, from an offender's family member or other agent of the offender; (2) commit bribery; that is, soliciting, accepting, or agreeing to accept any benefit in exchange for any exercise of official discretion; (3) accept an honorarium from anyone; or (4) accept any reward, or any promise of reward, from a person or company interested in any contract, purchase, or sale involving the TDCJ or by its authority. See ED-02.01, "Texas Department of Criminal Justice Ethics Policy."

    **34a.** **Committing Bribery - Violation Level 1:**

        Soliciting, accepting, or agreeing to accept any benefit in exchange for any exercise of official discretion.

    **34b.** **Accepting Goods, Money, Services, Favors, or Honoraria - Violation Level 2**

35. **Aiding and Abetting an Escape - Violation Level 1:**

An employee shall not aid or abet an escape or an escape attempt. An employee is under a duty to report any information regarding evidence of plans to escape, escape attempts, or actual escapes.

36. **Insubordination - Violation Level 3:**

An employee shall not show contempt or disrespect for authority through verbal or written communication or behavior.

When charging an employee with this violation, the employee's specific action of insubordination shall be clearly identified.

37. **Misconduct - Violation Level 4:**

An employee shall not engage in any activity that would have an adverse impact upon the integrity or productivity of the employee or the TDCJ. This includes establishing a non-productive work pattern, exhibiting disruptive behavior in the workplace, excessive visiting, engaging in loud boisterous behavior, and alerting other staff members when supervisor rounds are being conducted, unless otherwise instructed and engaging in any similar behavior.

An employee may be charged with this violation only when the employee's misconduct is not chargeable under any other violation. The specific misconduct shall be clearly identified.

38. **Trafficking and Trading:** Voided effective August 1, 2006. Rule was a violation level 2 and was incorporated in Rule Number 18.

**39.    Conviction of a Misdemeanor:**

An employee may be disciplined by TDCJ officials upon conviction of a misdemeanor offense.

An employee shall report an arrest, charge by information or complaint, indictment, or conviction of a misdemeanor offense, in accordance with PD-27, "Employment Status Pending Resolution of Criminal Charges or Protective Orders." Failure to report such information is a separate Rule Number 20 violation.

A minor traffic violation is not a misdemeanor or felony criminal charge for the purpose of PD-27, "Employment Status Pending Resolution of Criminal Charges or Protective Orders." An employee is not required to report a minor traffic violation to the employee's immediate supervisor or to any other TDCJ supervisor or manager, except as required for commercial drivers as outlined in PD-27. Driving while intoxicated (DWI), driving under the influence (DUI), driving while license is suspended (DWLS), failure to appear (FTA), reckless driving, open container, and assault with a motor vehicle are **not** minor traffic violations. For examples of minor traffic violations, see PD-27 attachment, "Examples of Minor Traffic Violations."

A misdemeanor conviction for a drug related offense is a violation of Rule Number 40. If an employee is not dismissed through the disciplinary process for conviction of a misdemeanor offense but is unable to perform the essential functions of the employee's position as a result of the conviction, the employee will be administratively separated from employment in accordance with PD-24, "Administrative Separation."

**39a.    Conviction of a Misdemeanor for an Offense Involving Domestic Violence by an Employee who is Required or Authorized to Carry a Firearm:**   Voided effective September 1, 2014. Rule was a violation level 1 and was incorporated into PD-24, "Administrative Separation."

**39b.    Conviction of any Other Misdemeanor - Violation Level 3 - Except for drug related offenses - see Rule Number 40**

**40.    Possession, Use, Sale, or Delivery of Illicit Drugs or Drug Paraphernalia - Violation Level 1:**
An employee shall not possess, use, sell, or deliver illicit drugs or drug paraphernalia while on-duty or off-duty. Possession, use, sale, or delivery of the same during off-duty hours, in a private residence, or while in a state or country where it is legal is not a defense to finding a violation.

**41.    Denial of Uniform Access to Courts - Violation Level 2:**
An employee shall not interfere in any manner with an offender's right of access to courts or to public officials. This includes, but is not limited to, unauthorized denial of legal visits or access to legal materials, harassing or retaliating against an offender for exercising the offender's right to file a grievance or complaint, or not allowing an offender to correspond with the courts or public officials.

**42.    Employee - Offender Relationships - See 42a, 42b, 42c, and 42d:**
An employee shall provide written notification of any relationship the employee has with an offender by submitting a PERS 282A, Additional Offender Information (Attachment M). The warden or department head shall indicate "approved, denied, or partially approved." The original PERS 282A shall be forwarded to Employee Services for imaging into the employee's Master Human Resources file. A copy of the PERS 282A shall be maintained in the employee's unit or department human resources file.

An immediate family member, as defined for the purpose of Rule Number 42b, includes a spouse, child, parent, brother, or sister. Relationships with an employee of the TDCJ who is also an offender's family member are excluded from this rule. The intent of this rule is not to prohibit relationships between employees and offender family members, but to encourage disclosure.

**42a. Cohabitation with Offender - Violation Level 1:**
An employee shall not knowingly cohabitate with an offender or an offender's family member unless the relationship has been approved or is one of the following exceptions.

Exceptions: This rule does not prohibit an employee from cohabiting with: (1) a spouse from a current marriage that existed prior to employment with the TDCJ; (2) a spouse from a current marriage who became an offender or whose family member became an offender after the employee's employment with the TDCJ; (3) one of the following by blood or current marriage: a child, daughter-in-law, son-in-law, grandchild, great grandchild, sister, brother, sister-in-law, brother-in-law, niece, nephew, mother, father, grandmother, grandfather, aunt, uncle, first degree cousin; or (4) a child or parent by adoption.

**42b. Failure to Provide Notification of Offender Relationship - Violation Level 2:**
An employee shall provide written notification to the duty warden and department head immediately upon becoming aware of any one of the following:

- The employee has a present relationship or had a past relationship with a current offender that involved direct interaction with the offender. Examples of direct interaction include, but are not limited to, dating, former in-law, personal correspondence, and visits to residence;

- The employee has an immediate family member who is currently an offender;

- The employee had a past acquaintance with a current offender that involved regularly planned or scheduled indirect interaction with the offender, such as a high school classmate;

- The employee has a present or had a past relationship with a current offender's immediate family member involving direct interaction;

- The employee's immediate family member has a present or had a past relationship with a current offender involving direct interaction;

- Any activity prohibited by Rule Number 42 (a, b, c, or d) between another employee and an offender; or

- Any change in a previously reported offender relationship and the nature of the change, such as an employee previously reported that an offender was an immediate family member's old boyfriend and then the immediate family member begins dating the offender again or an employee previously reported an ex-spouse is incarcerated and upon the offender's release to parole, the court grants the offender visitation rights with the employee's child.

**42c. Continuation or Establishment of Offender Relationship that Jeopardizes Security or Compromises the Employee, Other than Cohabitation or Sexual Misconduct - Violation Level 2:**
An employee shall not continue or establish an unreported or unapproved relationship with an offender, or an offender's family member, if the relationship jeopardizes or has the potential to jeopardize the security of the TDCJ or compromises the effectiveness of the employee.

An unreported or unapproved relationship that would have the potential to jeopardize the security of the TDCJ or compromise the effectiveness of the employee includes, but is not limited to, a relationship that is not excluded under Rule Number 42a and involves any one of the following: (a) correspondence with an offender; (b) offender visitation; (c) visits to an offender's residence not involving official TDCJ business; (d) visits to the residence of an offender's family member not involving official TDCJ business; (e) putting money into an offender's Inmate Trust Fund (ITF) account; or (f) the introduction of contraband and granting

special privileges as a result of a personal relationship with the offender, an offender's family member, or a current or previous associate of the offender.

Contact with an offender or an offender's family, including through social media, in and of itself does not constitute a relationship. If it is determined that an employee, through such contact, has potentially jeopardized the security of the TDCJ or compromised the effectiveness of the employee, the employee will be subject to disciplinary action.

**42d.  Sexual Misconduct with Offender - Violation Level 1:**
An employee shall not commit acts of sexual misconduct with: (1) any incarcerated offender; or (2) any offender under the supervision of the TDCJ who is not the employee's spouse.

Acts of sexual abuse and harassment are described in PD-29, "Sexual Misconduct with Inmates."

## 43.  On-Duty or Off-Duty Conduct - Violation Level 1:
Any action on the part of an employee that jeopardizes the integrity or security of TDCJ institutions, calls into question the employee's ability to perform effectively and efficiently in the employee's position, or casts doubt upon the integrity of the employee is prohibited.

An employee may be charged with a violation of this rule only when the employee's conduct is not chargeable under any other rule violation. The employee's specific conduct shall be clearly identified.

## 44.  Tampering with a Witness - Violation Level 1:
An employee shall not attempt to hinder or influence in any manner the testimony or information of any witness or potential witness in an investigation or administrative proceeding.

## 45.  Failure to Submit to Search - Violation Level 1:
An employee shall cooperate with TDCJ officials during the search of the employee's person or belongings while on state property. Upon entering state property or during routine inspections, an employee gives implied consent to the search of the employee's person or property.

## 46.  Falsification of the State of Texas Application for Employment - Violation Level 1:
An employee shall provide complete and accurate information on the employee's State of Texas Application for Employment and supporting documents.

## 47.  Refusal to Submit to Alcohol or Drug Tests - Violation Level 1:
An employee shall submit to alcohol or drug tests as outlined in existing policies, procedures, and federal regulations.

## 48.  Failure to have a Negative Alcohol or Drug Test Result or Failure to Comply with Conditions of a Treatment Agreement - Violation Level 1:
An employee selected for random drug testing, or who is reasonably suspected of using alcohol or drugs in the workplace, or performing official duties while under the influence of alcohol or drugs, will be required to submit to an alcohol and drug test and have a negative test result in accordance with PD-17, "Drug-Free Workplace" or PD-37, "Employee Commercial Drivers' Physical Examination and Alcohol/Drug Testing Programs."

An employee who signed a Treatment Agreement shall comply with all conditions of agreement. If the employee signed a Treatment Agreement as a result of independent dismissal mediation and fails to comply with the conditions of the agreement, the dismissal recommendation will be processed in accordance with this directive. See PD-17, "Drug-Free Workplace."

49. **Misuse of Official Authority or Information - Violation Level 1:**

An employee shall not: (1) use official authority or influence to affect political campaigns or other political activities; (2) prevent or restrict, or attempt to prevent or restrict, political donations of any kind to a person or political organization and is prohibited from coercing, or attempting to coerce, in any manner, a political contribution to a person or political organization; (3) intentionally disclose or use non-public information acquired by virtue of TDCJ employment to achieve a financial gain or other benefit, aid another person to do the same, or to defraud another person; or (4) cause an employee to be discharged, demoted, or otherwise discriminated against for providing public information to the legislature or in response to a request from the legislature.

50. **Discourteous Conduct of a Sexual Nature - Violation Level 2:**

An employee shall not engage in discourteous conduct of a sexual nature. See definition for "Discourteous Conduct of a Sexual Nature." Specific examples of discourteous conduct of a sexual nature that may rise to the level of sexual harassment are identified in PD-13, "Sexual Harassment and Discourteous Conduct of a Sexual Nature."

This rule violation shall be supported by the findings of an EEO prehearing investigation conducted in accordance with PD-13, "Sexual Harassment and Discourteous Conduct of a Sexual Nature."

51. **Failure to Report Use of Certain Prescription Drugs - Violation Level 4:**

An employee shall notify the employee's supervisor prior to reporting to work that the employee is taking a prescription medication that the employee believes has side effects that may interfere with the performance of the employee's assigned duties. The notification shall include the name of the prescribed drug, the name of the prescribing ph͏      , the possib͏      effects, and the approximate length of time the employee anticipates taking       g. See PD-      ug-Free Workplace."

52. **Failure to Provide Contact Information -** ͏      on Level 4.

An employee shall have current and valid co      nformation       with the employee's human resources representative, including: (a) a pho      ber assigne      nployee or a contact person through which the employee can be reache      the employe      ysical address; and (c) the employee's mailing address.

53. **Failure to Report Alleged Acts of Discrimination or Harassment Against Persons of a Protected Class, Discourteous Conduct of a Sexual Nature, or Retaliation - See 53a and 53b:**

TDCJ managers and supervisors shall report to Employee Relations Intake, Human Resources Division, all allegations of the following conduct reported to or any of the following conduct witnessed by the manager or supervisor, even when another employee or other individual does not complain about the act:

- Discrimination or harassment based on race, color, age (40 or above), sex (gender), including sexual harassment, national origin, religion, disability, and genetic information;

- Discourteous conduct of a sexual nature; and

- Retaliation against an individual who: (1) has rejected sexual harassment or discourteous conduct of a sexual nature; (2) has filed a complaint alleging sexual harassment, discourteous conduct of a sexual nature, or other discrimination prohibited by this rule; (3) has cooperated in a TDCJ or external investigation, hearing, or court proceeding regarding an allegation of sexual harassment, discourteous conduct of a sexual nature, or other discrimination prohibited by this rule; or (4) is associated with an individual who is involved in such activity.

Managers and supervisors shall report such acts in accordance with the procedures for allegations of such conduct in PD-13, "Sexual Harassment and Discourteous Conduct of a Sexual

Nature" or PD-31, "Discrimination in the Workplace." This rule violation shall be supported by an EEO prehearing investigation conducted in accordance with PD-13 or PD-31.

53a.    **Failure to Report an Alleged Act of Discrimination or Harassment Against Persons of a Protected Class, Discourteous Conduct of a Sexual Nature, or Retaliation; Took Corrective or Preventive Action - Violation Level 4**

53b.    **Failure to Report an Alleged Act of Discrimination or Harassment Against Persons of a Protected Class, Discourteous Conduct of a Sexual Nature, or Retaliation; Did Not Take Corrective or Preventive Action - Violation Level 3**

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
**PD-13 (rev. 9), "SEXUAL HARASSMENT AND DISCOURTEOUS CONDUCT**
**OF A SEXUAL NATURE"**
**SEPTEMBER 1, 2021**
# TABLE OF CONTENTS

| SECTION | PAGE NUMBER |
|---|---|

**AUTHORITY** ........................................................................................1

**APPLICABILITY** ..................................................................................1

**EMPLOYMENT AT WILL CLAUSE** ....................................................1

**POLICY STATEMENT** ........................................................................1

**DEFINITIONS** .....................................................................................2

**DISCUSSION**

I.  Prohibition on Sexual Harassment and Discourteous Conduct of a Sexual Nature ........4

II.  Prohibitions on Retaliation and Providing False Information ........................................5

    A.  Prohibition on Retaliation ....................................................................................5

    B.  Prohibition on Providing False Information ..........................................................5

III.  Dissemination ................................................................................................................5

IV.  Training ..........................................................................................................................6

**PROCEDURES**

I.  Reporting Allegations ......................................................................................................6

    A.  Employee or Other Individual Responsibilities ...................................................6

        1.  Prompt Reporting .......................................................................................6

        2.  Criminal Charges ........................................................................................7

        3.  Signed, Written Complaint .........................................................................8

    B.  Supervisor, Warden, or Department Head Responsibilities .................................8

II.  Responding to Allegations ...............................................................................................9

    A.  Intake Officer Responsibilities ............................................................................9

*i*

B.  Warden or Department Head Responsibilities Relating to Interim Remedial
    Actions ....................................................................................................................10

C.  Investigation.............................................................................................................10
    1.  General Provisions ...........................................................................................10
    2.  Investigation Process .......................................................................................11

D.  Notification of Further Action .................................................................................11

E.  Follow-Up.................................................................................................................12

F.  Dispute Resolution...................................................................................................12

III.  External Complaints.........................................................................................................13

A.  Closing of Internal EEO Complaint.........................................................................13

B.  Complainant's Participation in External Mediation .................................................13
    1.  Time Reporting .................................................................................................13
    2.  State Travel and Per Diem ...............................................................................14
    3.  Former Employees ...........................................................................................14

C.  Participation in Judicial Proceeding.........................................................................14

D.  Follow-Up Internal EEO Investigation ...................................................................14

Attachment A: PERS 497, EEO Complaint Form (09/21)

Attachment B: PERS 408, Notification of EEO Investigation and Interim Remedial Actions (09/21)

Attachment C: PERS 325-EEO, EEO Prehearing Investigation Report (09/21)



| | | |
|---|---|---|
| **TEXAS DEPARTMENT** | **NUMBER:** | **PD-13 (rev. 9)** |
| **OF** | **DATE:** | **September 1, 2021** |
| **CRIMINAL JUSTICE** | **PAGE:** | **1 of 19** |
| | **SUPERSEDES:** | **PD-13 (rev. 8)** <br> **January 1, 2021** |

# EXECUTIVE DIRECTIVE

**SUBJECT:**      **SEXUAL HARASSMENT AND DISCOURTEOUS CONDUCT OF A SEXUAL NATURE**

**AUTHORITY:**      Title VII, *Civil Rights Act of 1964*, as amended, 42 U.S.C. §§ 2000e–2000e-17; Tex. Gov't Code §§ 493.001, 493.006(b), 493.007; Tex. Lab. Code §§ 21.001–.556, 301.151–.157; Tex. Penal Code § 39.03; BP-02.08, "Statement of Internal Controls"

**APPLICABILITY:** Texas Department of Criminal Justice (TDCJ)

**EMPLOYMENT AT WILL CLAUSE:**

This directive **does not** constitute an employment contract or a guarantee of continued employment. The TDCJ reserves the right to change the provisions of this directive at any time.

Nothing in this directive limits the executive director's authority to establish or revise human resources policy. This directive guides the operations of the TDCJ and **does not** create a legally enforceable interest for employees or limit the executive director's, deputy executive director's, or division directors' authority to terminate an employee at will.

**POLICY:**

The TDCJ has zero tolerance for all forms of gender discrimination, to include sexual harassment, and prohibits discourteous conduct of a sexual nature. Retaliation for opposing or reporting discrimination, or for associating with someone who has opposed or reported discrimination, is prohibited. Allegations of conduct prohibited by this directive will be investigated by Employee Relations, Human Resources Division.

An employee who violates the provisions of this directive may be subject to disciplinary action, up to and including dismissal, in accordance with PD-22, "General Rules of Conduct and Disciplinary Action Guidelines for Employees."

## DEFINITIONS:

The following terms are defined for the purpose of this policy and are not intended to be applicable to other policies or procedures.

"Complainant" is an employee or other individual bringing forth allegations of prohibited conduct.

"Discourteous Conduct of a Sexual Nature" is conduct, in words or actions, of a sexual nature toward or observed by another TDCJ employee or other individual (see definition for "Other Individual") that: (a) a reasonable person would find offensive; or (b) is unwelcome to the person to whom such conduct is directed and that person has communicated, by words or actions, to the other person that the conduct is unwelcome.

"Discrimination" is unequal treatment of persons based on race, color, religion, sex (gender), including sexual harassment, national origin, age (40 or above), disability, or genetic information (collectively "protected class"). Discrimination by employers falls into four general areas: (1) hiring and firing, such as failing or refusing to hire, or discharging; (2) employment conditions, such as compensation, terms, conditions, or privileges; (3) segregation and classification, such as limiting, segregating, or classifying employees in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect their status as an employee; and (4) training, such as unequal access to training that may affect an individual's ability to promote.

"Employee" is any person employed by the TDCJ on a full-time, part-time, or temporary basis.

"Equal Employment Opportunity Commission" (EEOC) is the federal agency which enforces federal laws prohibiting discrimination in employment and retaliation. The EEOC is separate from the TDCJ's Employee Relations.

"Equal Employment Opportunity Designated Agency Official" (EEO-DAO) is a TDCJ employee designated by the executive director to: (1) conduct disciplinary hearings for equal employment opportunity (EEO) rule violations; (2) represent the TDCJ during independent dismissal mediation for an EEO dismissal recommendation; (3) respond to grievances regarding EEO disciplinaries; or (4) approve a dismissal resulting from an EEO dismissal recommendation.

"Equal Employment Opportunity Rule Violation" is a violation of one of the following TDCJ Employee General Rules of Conduct, as published and described in PD-22, Attachment A, Listing of Employee General Rules of Conduct and Disciplinary Violations: (a) Rule Number 14b, Use of Offensive Words or Actions – Protected Class; (b) Rule Number 21, Discrimination or Harassment Against Persons of a Protected Class or Retaliation; (c) Rule Number 32, Destroying Evidence or Giving False Testimony or Information, when related to an EEO issue; (d) Rule Number 44, Tampering with a Witness, when related to an EEO issue; (e) Rule Number 50, Discourteous Conduct of a Sexual Nature; (f) Rule Number 53, Failure to Report Alleged Acts of Discrimination or Harassment Against Persons of a Protected Class, Discourteous Conduct of a Sexual Nature, or Retaliation; or is an EEO violation in accordance with PD-33, "Trainee Management."

"Hostile Work Environment" is offensive behavior based on a protected class that is severe or pervasive enough to alter employment conditions. All circumstances shall be considered, including the frequency and severity of the conduct, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.

"Intern" is an individual who performs work for the TDCJ on a temporary basis without pay and whose work: (a) provides training or supplements training given in an educational environment; (b) provides experience for the benefit of the individual performing the work; and (c) is performed under the close supervision of TDCJ staff.

"Other Individual" includes a contract employee, applicant, employee of a vendor, intern, or a volunteer. The definition does not include an individual under the supervision or custody of the TDCJ.

"Pre-Service Training Academy" includes the Training and Leader Development Division Pre-Service Training Academy, the Parole Officer Training Academy, and the Office of the Inspector General Training Academy.

"Reprimanding Authority" is a TDCJ official designated to perform certain duties relating to the employee disciplinary process, including pre-service academy rule violations.

"Respondent" is an employee accused of committing an act prohibited by this directive.

"Retaliation" is any action that may deter a reasonable person from: (1) filing a complaint of, participating in a proceeding regarding, or otherwise opposing, an alleged EEO rule violation; or (2) associating with an employee or other individual who engaged in a protected activity.

"Sexual Harassment" is unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature when: (a) the conduct is sufficiently pervasive or severe that it has the effect of unreasonably interfering with an individual's work performance or creating a work environment that a reasonable person would find intimidating, hostile, or offensive; (b) submission to the conduct is made either explicitly or implicitly a term or condition of an individual's employment; or (c) submission to or rejection of the conduct by an individual is used as a basis for employment decisions affecting the individual.

"Supervisor" is an employee whose job duties include, expressly or implicitly: (1) directing the job performance of an employee or group of employees; (2) ensuring TDCJ policies are carried out; and (3) ensuring all applicable state and federal employment-related laws are observed.

"Texas Workforce Commission, Civil Rights Division" (TWC-CRD) is the state agency charged with: (1) enforcing state laws prohibiting discrimination in employment or retaliation; and (2) investigating alleged violations of such laws.

"Trainee" is an employee attending a pre-service training academy.

**DISCUSSION:**

I.    Prohibition on Sexual Harassment and Discourteous Conduct of a Sexual Nature

    A.    TDCJ employees are prohibited from stating, threatening, or insinuating, either explicitly or implicitly, that the terms, conditions, or privileges of employment will be affected if an employee or other individual refuses to submit to unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.

    B.    TDCJ employees are prohibited from engaging in conduct of a sexual nature that has the purpose or effect of unreasonably interfering with an employee's or other individual's work performance or creating an intimidating, hostile, or offensive work environment.

    C.    TDCJ employees are prohibited from engaging in discourteous conduct of a sexual nature. Conduct of a sexual nature may be offensive or unwelcome even if another employee or other individual does not openly object to it. However, all employees and other individuals are encouraged to immediately inform an individual engaging in offensive or unwelcome conduct that such behavior is unwelcome and should cease immediately.

    Discourteous conduct of a sexual nature that is prohibited by this directive and which may rise to the level of sexual harassment includes the following:

        1.    Physical acts such as intentional physical conduct that is sexual in nature or which a reasonable person would find offensive. Examples of such acts include intentional touching, jabbing, pinching, grabbing, rubbing, pressing, or brushing against a person's body.

        2.    Sexual advances, propositions, or comments, such as:

            a.    Gestures, remarks, or jokes of a sexual nature that are unwelcome or would be offensive to a reasonable person;

            b.    Displaying, reading, publicizing, or bringing into the workplace any materials of a sexual nature, such as pictures, posters, calendars, graffiti, objects depicting sexual poses, videos, movies, sound recordings, screen savers, or other materials that a reasonable person would regard as sexual in nature and inappropriate in a professional work environment; or

            c.    Displaying sexually oriented tattoos.

    D.    Discourteous conduct of a sexual nature occurring at a TDCJ-sponsored or work-related event held away from the everyday worksite may constitute a violation of this directive.

II.    Prohibitions on Retaliation and Providing False Information

In addition to prohibiting sexual harassment and discourteous conduct of a sexual nature, the TDCJ also prohibits retaliation and providing false information.

A.    Prohibition on Retaliation

1.    The TDCJ prohibits retaliation.

Examples of adverse actions that may be considered by the TDCJ to be retaliation include:

a.    Inappropriately disciplining employees;

b.    Inappropriately changing an employee's work assignment;

c.    Inappropriately refusing to cooperate or discuss work-related matters with an employee;

d.    Providing ratings on an employee's performance evaluation that are below the employee's actual job performance; or

e.    Intimidating an employee.

All employees should be aware that the term "retaliation" has a legal meaning, and some of the foregoing examples may not constitute legally actionable retaliation.  Nevertheless, the TDCJ retains the right to discipline employees for acts the TDCJ defines as retaliation, regardless of whether such acts would constitute legally actionable retaliation.

2.    Retaliation against individuals other than employees for engaging in protected activities may be a violation of PD-22, "General Rules of Conduct and Disciplinary Action Guidelines for Employees."

B.    Prohibition on Providing False Information

The TDCJ also prohibits employees from providing false information in any report, investigation, or hearing.  Filing a complaint under this directive that the employee knows is unjustified is a violation of PD-22, "General Rules of Conduct and Disciplinary Action Guidelines for Employees."

III.    Dissemination

Every employee is responsible for becoming familiar with the provisions of this directive so that each employee can assist in ensuring the TDCJ's work environment is free of sexual harassment, discourteous conduct of a sexual nature, and retaliation.  A copy of this directive is provided to each newly hired or rehired employee as part of the

employee's Direct Hire Packet. All newly hired or rehired employees are required to initial a receipt indicating they received a copy of this directive. In addition, this directive is published in the TDCJ *Personnel Manual*, which is available on the TDCJ website at http://www.tdcj.texas.gov/, and from the employee's human resources representative.

IV.    Training

All employees shall receive training regarding the provisions of this directive in accordance with PD-97, "Training and Staff Development."

## PROCEDURES:

I.    Reporting Allegations

Wardens, department heads, supervisors, and other employees shall follow the procedures of this directive when reporting allegations of sexual harassment, discourteous conduct of a sexual nature, or retaliation. Through adherence to these procedures, the TDCJ strives to maintain a work environment free of sexual harassment and discourteous conduct of a sexual nature and will take prompt remedial action in response to such reports before the alleged conduct creates a hostile work environment. The TDCJ protects the confidentiality of the parties involved to the extent allowed by law.

A.    Employee or Other Individual Responsibilities

1.    Prompt Reporting                    E 2

The most effective means of eliminating sexual harassment and discourteous conduct of a sexual nature is the prompt reporting of such matters by employees or other individuals who have been subjected to, made aware of, or observed prohibited conduct. Therefore, the TDCJ strongly encourages those persons who believe they have been subjected to, made aware of, or observed conduct prohibited by this directive to immediately report the allegation directly to one or more of the following, not necessarily in the order listed:

a.    The employee's immediate supervisor, warden, or department head;                    E 2b

b.    The employee's second level supervisor or higher authority, if the person complained of is the employee's immediate supervisor or in the employee's chain of supervision;

c.    The TDCJ executive director;

d.  TDCJ Employee Relations Intake

During normal business hours, 8 a.m.–5 p.m., Monday through Friday, TDCJ employees may contact Employee Relations Intake, Human Resources Division.  During hours other than normal business hours, TDCJ employees may call the after-hours phone number.

The phone number for Employee Relations Intake and the cell phone number for after-hours reporting may be obtained through the following sources:

(1)  The unit or department human resources representative;

(2)  The warden or department head;

(3)  The notice posted in the common-use area at each unit or department; or

(4)  The TDCJ website at http://www.tdcj.texas.gov/divisions/ hr/hr-home/eeo-intake.html;

e.  The EEOC

The deadline to file a complaint with the EEOC is 300 calendar days from the last date the alleged conduct took place and/or.

f.  The TWC-CRD

(1)  The deadline to file a complaint with the TWC-CRD alleging an unlawful employment practice is 180 calendar days from the last date the alleged unlawful employment practice took place; and/or

(2)  The deadline to file a complaint with the TWC-CRD alleging sexual harassment is 300 calendar days from the last date the alleged sexual harassment took place.

2.  Criminal Charges

An employee or other individual may contact the Office of the Inspector General (OIG) if the allegation involves a potentially criminal act.  The OIG may conduct a criminal investigation simultaneously with the Human Resources Division's EEO investigation.

3.    Signed, Written Complaint

Although an employee's or other individual's initial report of an allegation may be verbal, the complainant shall submit a signed, written complaint in order for the complaint to be processed by the TDCJ. The complainant is encouraged to complete the PERS 497, EEO Complaint Form (Attachment A) when submitting an EEO-related complaint in accordance with this directive; however, a signed, written EEO-related complaint will not be rejected if it is submitted via another format.

The signed, written complaint may identify only one respondent. If the complainant is reporting alleged violations of this directive committed by more than one respondent, the complainant shall submit separate signed, written complaints identifying each respondent's alleged conduct.

The employee or other individual need not specify whether the alleged conduct is "sexual harassment" or "discourteous conduct of a sexual nature," but it is recommended that the employee or other individual include one of these phrases or "PD-13" in the complaint.

Any questions concerning the reporting of an allegation may be directed to Employee Relations Intake.

B.    Supervisor, Warden, or Department Head Responsibilities    *E . 20*

1.    Employee Relations Intake shall be contacted via telephone, fax, or email no later than 72 hours after a supervisor observes conduct or becomes aware of any alleged conduct that may be prohibited by this directive. Employee Relations Intake shall be contacted regardless of whether the individual objects to the alleged conduct or even if it appears that the alleged conduct may not rise to the level of an EEO rule violation.

2.    The supervisor, warden, or department head may call the after-hours phone number during hours other than normal business hours to report an allegation that may be prohibited by this directive.

The contact information for after-hours reporting may be obtained through the sources listed in Procedures Section I.A.1.d of this directive.

X 3.    Even if a supervisor who observed conduct or became aware of alleged conduct that may be prohibited by this directive reports the allegation through the supervisor's chain of command to a designated higher level of authority, such as a warden or department head, the supervisor is still responsible for contacting Employee Relations Intake regardless of whether written verification was received from the higher level of authority. However, there is nothing that prohibits the designated higher level of authority from also contacting Employee Relations Intake

*E. 21*

regarding the alleged behavior. In any case, the supervisor in the chain of command having knowledge of the allegation should provide the higher level of authority with written verification, such as an inter-office communication (IOC) or email, of the date and time they were notified, as well as when Employee Relations Intake was contacted.

4.    The supervisor, warden, or department head shall provide the following information, if available, to Employee Relations Intake:

    a.    Specific nature of the complaint or description of the observed or alleged conduct;

    b.    Names and titles of parties involved; and

    c.    Date and time the supervisor, warden, or department head observed the conduct or became aware of the alleged conduct and the date(s) the alleged conduct occurred.

5.    A supervisor, warden, or department head shall contact Employee Relations Intake even if an individual making or reporting the allegations requests that the matter be kept confidential and no action be taken. If the individual refuses to provide information without assurance of no action being taken, the supervisor, warden, or department head shall:

    a.    Advise the individual that TDCJ policy requires the supervisor, warden, or department head to take action;

    b.    Refer the individual to Employee Relations Intake; and

    c.    Inform the intake officer of the referral when reporting the incident.

If a supervisor, warden, or department head fails to take action in response to an allegation, the supervisor, warden, or department head may be subject to disciplinary action.

II.    Responding to Allegations

    A.    Intake Officer Responsibilities

        1.    Upon notification of an allegation of conduct that may be prohibited by this directive, an intake officer shall take the following actions:

        a.    Advise the complainant how to obtain a PERS 497 and, if the notification was in a format other than a PERS 497, encourage the complainant to complete the PERS 497.

b.    Process a signed, written complaint in accordance with the procedures outlined in this directive. If the complaint was submitted as a grievance, the intake officer shall close the grievance prior to processing the complaint as an EEO complaint.

c.    Ensure the complainant has been notified of the following:

    (1)    The complainant's right to file with the EEOC and TWC-CRD; and

    (2)    The complainant's option to contact the OIG if the complainant wants to pursue criminal charges.

d.    Consult with the supervisor, warden, or department head on any remedial action to be taken.

2.    When referring a complaint for EEO investigation, the intake officer shall consult with the warden or department head to determine whether interim remedial action will be taken and the nature of any such action and issue the PERS 408, Notification of EEO Investigation and Interim Remedial Actions (Attachment B), as necessary.

B.    Warden or Department Head Responsibilities Relating to Interim Remedial Actions

After consulting with the intake officer, the warden, department head, or designee shall meet separately with the complainant and respondent, provide each with a separate PERS 408, and distribute as indicated on the form.

C.    Investigation

232

1.    General Provisions

a.    The manager of Employee Relations may direct that an EEO investigation be conducted as warranted.

b.    Each EEO investigation will be:

    (1)    Conducted discreetly and fairly to all parties involved;

    (2)    Conducted in a timely and thorough manner; and

    (3)    Completed when it contains a valid claim of a possible violation of EEO policy, even if the complainant withdraws the complaint.

2.    Investigation Process

a.    The EEO investigator shall:

(1)    Complete Sections I and III of the PERS 325-EEO, EEO Prehearing Investigation Report (Attachment C);

(2)    Interview all relevant parties;

(3)    Gather related documentation as needed; and

(4)    Upon completion of the investigation, forward for review to the Employee Relations section director or designee.

b.    The Employee Relations section director or designee shall:

(1)    Review the investigation and, if necessary, revise the EEO Prehearing Investigative Findings;

(2)    Complete Section IV of the PERS 325-EEO; and

(3)    Submit the investigation to the manager of Employee Relations or designee.

c.    The manager of Employee Relations or designee shall:

(1)    Review the investigation and, if necessary, revise the EEO Prehearing Investigative Findings;

(2)    Complete Section V of the PERS 325-EEO; and

(3)    If appropriate, forward to the Office of the General Counsel (OGC) to review the manager of Employee Relations' recommended action.

D.    Notification of Further Action

1.    If the investigation is forwarded to an EEO-DAO or TLDD director or designee for review of an alleged EEO rule violation, the manager of Employee Relations or designee shall ensure the complainant receives written notice that the investigation has been forwarded for review. The notification shall identify the name and title of the reprimanding authority. The notification shall not identify any other information relating to the investigation.

2.    If the investigation is forwarded to a reprimanding authority or TLDD director or designee for review of an alleged rule violation other than an EEO rule violation, or is not forwarded to a reprimanding authority, the

manager of Employee Relations or designee shall ensure the findings are disclosed in writing only to the following:

    a.    The respondent's warden, department head, regional director, any other manager, or TLDD director or designee, as appropriate;

    b.    The executive director, deputy executive director, the appropriate division director, and, if applicable, the appropriate division deputy director;

    c.    The complainant; and

    d.    The respondent.

E.    Follow-Up

If the investigation is forwarded to an EEO-DAO or TLDD director or designee for review of an alleged EEO rule violation, the manager of Employee Relations or designee shall ensure documentation is received relating to the outcome of the review. Upon receipt of this documentation, the manager of Employee Relations shall ensure the following persons are notified of the outcome of the reprimanding authority's review:

    1.    The respondent's warden, department head, regional director, any other manager, or TLDD director or designee, as appropriate;

    2.    The executive director, deputy executive director, the appropriate division director, and, if applicable, the appropriate division deputy director;

    3.    The complainant; and

    4.    The respondent.

If the respondent is found guilty of an EEO rule violation, the respondent shall view the EEO *Disciplinary Compliance* training video (EEODISC) within seven days of the disciplinary hearing.

F.    Dispute Resolution    ε_3¶

A warden or department head may contact Employee Relations Intake and request that the complainant and respondent participate in the dispute resolution process in accordance with PD-35, "Independent Dismissal Mediation and Dispute Resolution," when an EEO investigation has been completed, if:

    1.    The manager of Employee Relations or designee has determined the investigation will not be forwarded to a reprimanding authority; or

2.  The manager of Employee Relations or designee has determined the investigation will be forwarded to a reprimanding authority, and a final decision relating to disciplinary action has been made.

Participation in a dispute resolution session will not be in lieu of appropriate disciplinary action.

III.  External Complaints

The following procedures apply when an employee files a complaint with the EEOC, the TWC-CRD, or in a court alleging sexual harassment or retaliation.

A.  Closing of Internal EEO Complaint

Upon receiving notice of such an external complaint, Employee Relations Intake will determine whether there is an internal complaint filed by the same employee. Employee Relations will close the internal complaint when:

1.  The internal complaint and external complaint are based on the same or similar allegations; and

2.  The internal EEO investigation has not been completed.

B.  Complainant's Participation in External Mediation

1.  Time Reporting

If the complainant is on the TDCJ payroll at the time of the external mediation, the complainant's appearance at the mediation is considered official business and on paid time. The complainant shall provide sufficient advance notice of the scheduled mediation to the complainant's supervisor so management can ensure adequate staffing.

a.  The time reported as time worked is limited to:

(1)  The time that an employee is required to be available at the mediation; and

(2)  The time required for the employee to travel to and from the location of the mediation in accordance with state travel regulations and TDCJ policies.

b.  Time for an employee to observe another employee's mediation may not be reported as time worked.

2.   State Travel and Per Diem

The complainant will be reimbursed for any reasonable and necessary expenses in connection with attendance in accordance with state travel regulations and TDCJ policies.

3.   Former Employees

A former employee who attends an external mediation conducted by the EEOC or TWC-CRD will not receive travel expenses or per diem for participating in external mediation.

C.   Participation in Judicial Proceeding

When an employee participates in a judicial proceeding related to alleged sexual harassment or retaliation, time reporting and state per diem reimbursement shall be in accordance with PD-57, "Employee Participation in Legal or Legislative Proceedings or Jury Services."

D.   Follow-Up Internal EEO Investigation

Human Resources, and the OGC when warranted, determines on a case-by-case basis whether to complete an internal EEO investigation when:

1.   A complaint filed with the EEOC or TWC-CRD has not been the subject of a completed internal EEO investigation; and

2.   The complaint filed with the EEOC or TWC-CRD concludes.


Bryan Collier
Executive Director

# Texas Workforce Commission

## A Member of Texas Workforce Solutions

Bryan Daniel, Chairman
Commissioner Representing the Public

Aaron Demerson
Commissioner Representing Employers

Alberto Treviño, III
Commissioner Representing Labor

Edward Serna
Executive Director

Wed Jul 19 00:00:00 EDT 2023

Jerry J. Jerry
2003 8th Avenue #14
Fort Worth, TX 76110
c/o

RE:    **LETTER OF NOTICE OF RIGHT TO FILE CIVIL ACTION**

TWCCRD: 1A23115                    EEOC: 31C-2023-00092
RE: Jerry J. Jerry v Texas Department of Criminal Justice-Parole Office

Dear Jerry J. Jerry:

Charging Party alleges that they have been subjected to Harassment, Sexual Harassment and Discharge based on their Retaliation and Sex. This letter certifies you have submitted a request for a Notice of Right to File Civil Action to the Texas Workforce Commission Civil Rights Division. Upon issuance the TWCCRD will immediately close this case.

The Notice of Right to File Civil Action is on page 2 of this letter and will be sent to the parties electronically at the addresses on file.

DocuSign Envelope ID: 4F4532DC-1663-4AEA-8DA8-8EDD41DE3741

Wed Jul 19 00:00:00 EDT 2023    Jerry J. Jerry v Texas Department    Page **2** of **2**
                                of Criminal Justice-Parole Office

## NOTICE OF RIGHT TO FILE CIVIL ACTION

Pursuant to Sections 21.208, 21.252 and 21.254 of the Texas Labor Code, as amended, this notice is to advise you of your right to bring a private civil action in state court in the above referenced case. **PLEASE BE ADVISED THAT YOU HAVE SIXTY (60) DAYS FROM THE RECEIPT OF THIS NOTICE TO FILE THIS CIVIL ACTION.** The time limit for filing suit based on a federal claim may be different.

## EEOC REVIEW NOTICE

As your charge was dual filed under Title VII of the Civil Rights Act/Age Discrimination in Employment Act/Americans with Disabilities Act, which are enforced by the U.S. Equal Employment Opportunity Commission (EEOC), you have the right to request an EEOC review of this final decision on your case. **To secure a review, you must request it in writing within fifteen (15) days from the date of the notice.** Send your request to: San Antonio EEOC, 5410 Fredericksburg Road, Suite 200, San Antonio, TX 78229.

On behalf of the Division,

*Venessa Hernandez for Bryan Snoddy*                    7/25/2023
_____                      _____
Bryan Snoddy                                          Date
Division Director


cc:
Rachelle White
Texas Department of Criminal
Justice-Parole Office
4836 Carey Street
Fort Worth, TX 76119

101 E. 15th Street, Room 154 • Austin, Texas 78778-0001 • (512) 463-2642 (T) • (512) 463-2643 (F) • Relay Texas: 800-735-2989 (TDD) 800-735-2988 (Voice) • www.twc.texas.gov
Equal Opportunity Employer / Program
Auxiliary aids and services are available upon request to individuals with disabilities

TEXAS
WORKFORCE SOLUTIONS
* * * *

**DocuSign**

## Certificate Of Completion

Envelope Id: 4F4532DC16634AEA8DA88EDD41DE3741                                    Status: Sent
Subject: 2023-07-19 Jerry Letter of NRTFCA 31C-2023-00092.pdf
docSeqId:
docType:
Source Envelope:
Document Pages: 2                        Signatures: 1                            Envelope Originator:
Certificate Pages: 5                     Initials: 0                              Venessa Hernandez
AutoNav: Enabled                                                                  101 E. 15th Street, Room 0154-B
EnvelopeId Stamping: Enabled                                                      Austin, TX  78778
Time Zone: (UTC-06:00) Central Time (US & Canada)                                 venessa.hernandez@twc.texas.gov
                                                                                  IP Address: 64.207.219.71

## Record Tracking

Status: Original                         Holder: Venessa Hernandez               Location: DocuSign
       7/25/2023 10:28:22 AM                     venessa.hernandez@twc.texas.gov
Security Appliance Status: Connected     Pool: StateLocal
Storage Appliance Status: Connected      Pool: Texas Workforce Commission- Production   Location: DocuSign
                                         Account

| Signer Events | Signature | Timestamp |
|---|---|---|
| Venessa Hernandez for Bryan Snoddy<br>venessa.hernandez@twc.texas.gov<br>Administrative Assistant<br>Texas Workforce Commission<br>Security Level: Email, Account Authentication (None) | *Venessa Hernandez for Bryan Snoddy*<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 204.65.0.21 | Sent: 7/25/2023 10:32:13 AM<br>Viewed: 7/25/2023 10:33:01 AM<br>Signed: 7/25/2023 10:33:06 AM |

**Electronic Record and Signature Disclosure:**
    Not Offered via DocuSign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|
| Jerry J Jerry<br>Jjj1961@tamu.edu<br>Security Level: Email, Account Authentication (None) | **VIEWED**<br><br>Using IP Address: 71.11.199.98 | Sent: 7/25/2023 10:33:08 AM<br>Viewed: 7/25/2023 10:37:33 AM |

**Electronic Record and Signature Disclosure:**
    Accepted: 7/25/2023 10:37:33 AM
    ID: 99007eff-f643-4180-96cd-9b28e4a188b1

Rachelle White                                                                   Sent: 7/25/2023 10:33:07 AM
Rachelle.white@tdcj.texas.gov
Security Level: Email, Account Authentication
(None)
**Electronic Record and Signature Disclosure:**
    Not Offered via DocuSign

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Alex Stewart | COPIED | Sent: 7/25/2023 10:33:07 AM |
| alex.stewart@twc.texas.gov | | |
| Civil Rights Investigator | | |
| Texas Workforce Commission | | |
| Security Level: Email, Account Authentication (None) | | |
| **Electronic Record and Signature Disclosure:** Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 7/25/2023 10:32:13 AM |
| Signing Complete | Security Checked | 7/25/2023 10:33:06 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/31/2023 7:38:41 AM
Parties agreed to: Jerry J Jerry

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Carahsoft obo Texas Workforce Commission (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Carahsoft obo Texas Workforce Commission:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:

**To advise Carahsoft obo Texas Workforce Commission of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at  and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Carahsoft obo Texas Workforce Commission**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to  and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Carahsoft obo Texas Workforce Commission**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to heather.hall@twc.state.tx.us and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Carahsoft obo Texas Workforce Commission as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Carahsoft obo Texas Workforce Commission during the course of your relationship with Carahsoft obo Texas Workforce Commission.

complaint, a court may:

        (1)  prohibit by injunction the respondent from engaging in an
unlawful employment practice;  and

        (2)  order additional equitable relief as may be appropriate.

  (b)  Additional equitable relief may include:

        (1)  hiring or reinstating with or without back pay;

        (2)  upgrading an employee with or without pay;

        (3)  admitting to or restoring union membership;

        (4)  admitting to or participating in a guidance program,
apprenticeship, or on-the-job training or other training or retraining
program, using objective job-related criteria in admitting an individual to
a program;

        (5)  reporting on the manner of compliance with the terms of a
final order issued under this chapter;  and

        (6)  paying court costs.

  (c)  Liability under a back pay award may not accrue for a date more
than two years before the date a complaint is filed with the commission.
Interim earnings, workers' compensation benefits, and unemployment
compensation benefits received operate to reduce the back pay otherwise
allowable.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


   Sec. 21.2585.  COMPENSATORY AND PUNITIVE DAMAGES.  (a)  On finding
that a respondent engaged in an unlawful intentional employment practice as
alleged in a complaint, a court may, as provided by this section, award:

     (1)  compensatory damages;  and

     (2)  punitive damages.

  (b)  A complainant may recover punitive damages against a respondent,
other than a respondent that is a governmental entity, if the complainant
demonstrates that the respondent engaged in a discriminatory practice with
malice or with reckless indifference to the state-protected rights of an
aggrieved individual.

  (c)  Compensatory damages awarded under this section may not include:

     (1)  back pay;

     (2)  interest on back pay;  or

     (3)  other relief authorized under Section 21.258(b).

  (d)  The sum of the amount of compensatory damages awarded under this
section for future pecuniary losses, emotional pain, suffering,
inconvenience, mental anguish, loss of enjoyment of life, and other

nonpecuniary losses and the amount of punitive damages awarded under this section may not exceed, for each complainant:

  (1) $50,000 in the case of a respondent that has fewer than 101 employees;

  (2) $100,000 in the case of a respondent that has more than 100 and fewer than 201 employees;

  (3) $200,000 in the case of a respondent that has more than 200 and fewer than 501 employees;  and

  (4) $300,000 in the case of a respondent that has more than 500 employees.

 (e)  For the purposes of Subsection (d), in determining the number of employees of a respondent, the requisite number of employees must be employed by the respondent for each of 20 or more calendar weeks in the current or preceding calendar year.

Added by Acts 1995, 74th Leg., ch. 76, Sec. 9.07(b), eff. Sept. 1, 1995. Amended by Acts 1999, 76th Leg., ch. 872, Sec. 13, eff. Sept. 1, 1999.


 Sec. 21.259.  ATTORNEY'S FEES;  COSTS.  (a)  In a proceeding under this chapter, a court may allow the prevailing party, other than the commission, a reasonable attorney's fee as part of the costs.

 (b)  The state, a state agency, or a political subdivision is liable for costs, including attorney's fees, to the same extent as a private person.

 (c)  In awarding costs and attorney's fees in an action or a proceeding under this chapter, the court, in its discretion, may include reasonable expert fees.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 76, Sec. 9.07(c), eff. Sept. 1, 1995.


 Sec. 21.260.  RELIEF FOR DISABLED EMPLOYEE OR APPLICANT.  If the affected employee or applicant for employment has a disability, a court shall consider the undue hardship defense, including the reasonableness of the cost of necessary workplace accommodation and the availability of alternatives or other appropriate relief.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


 Sec. 21.261.  COMPELLED COMPLIANCE.  If an employer, employment agency, or labor organization fails to comply with a court order issued

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Jerry Just Jerry

**DEFENDANTS**

Texas Department of Criminal Justice-Parole Division

**(b)** County of Residence of First Listed Plaintiff    Tarrant
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Dallas
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

(Pro Se) 2003 8th Ave #14
Fort Worth, TX 76110 817-703-1512

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | **PERSONAL INJURY** | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | **LABOR** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** |
| [ ] 196 Franchise | | | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) |
| | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | **IMMIGRATION** | **FEDERAL TAX SUITS** |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 871 IRS—Third Party 26 USC 7609 |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | |
| | | [ ] 550 Civil Rights | | [ ] 890 Other Statutory Actions |
| | | [ ] 555 Prison Condition | | [ ] 891 Agricultural Acts |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | [ ] 893 Environmental Matters |
| | | | | [ ] 895 Freedom of Information Act |
| | | | | [ ] 896 Arbitration |
| | | | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| | | | | [ ] 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII, Civil Rights Act of 1964, as amended, 42 U.S.C.§§ 2000e, et seq.
Brief description of cause:
Sexual Harassment

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE    N/A       DOCKET NUMBER

DATE                  SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #       AMOUNT       APPLYING IFP       JUDGE       MAG. JUDGE

U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS

## Instructions to a Non-Prisoner *Pro Se* Plaintiff

4 - 23 CV - 948 - P

Your suit _____ was filed on _____ and has been assigned case number _____.

These instructions do not include everything you need to know to pursue your case, but following them may help you avoid common mistakes that can result in delay or other consequences—including dismissal of your case.

1. **Filing Procedures** - The Local Civil Rules include the following requirements:

   • After you have filed your complaint, unless you are excused for cause or the presiding judge directs otherwise, you must:

     ‣ register as an Electronic Case Files (ECF) user within 14 days (you may register online via our website at www.txnd.uscourts.gov), and

     ‣ file any pleading, motion, or other paper electronically.  (Electronic filing is not permitted in a case assigned to the docket of U.S. District Judge John H. McBryde.)

   • You must submit a judge's copy (a paper copy) of any document you file, even if you filed the original electronically.

     ‣ If you electronically file a document, follow the procedures set forth in the ECF Administrative Procedures Manual to provide the judge with the judge's copy.

     ‣ If you file a document on paper and want a file-stamped copy returned to you, submit the original, the judge's copy, and an extra copy to be returned to you, and provide a self-addressed, postage-paid envelope.  The clerk cannot make an extra copy for you unless you first pay a fee of 50 cents per page.

   • You must type or legibly handwrite your documents on one side of numbered pages.  Any exhibit or discovery material attached to the filing must be referred to in the filing.  Any exhibit or discovery material not referred to in your filing or not attached to your filing may be returned to you.

2. **Address Change** - You must notify the Court if your address changes, or your case may be dismissed.  If you are an ECF user, follow the procedures in the ECF Administrative Procedures Manual to update your address.  If you are not an ECF user, promptly file a written change of address notice in your case.

3. **Rules to Follow** - You must read and follow the Federal Rules of Civil Procedure (FRCP), this court's Local Civil Rules, and the orders entered by a judge in your case.

4. **Request for Attorney** - In a civil case, you generally are not entitled to a court-appointed attorney to represent you without cost to you.  If you request a court-appointed attorney, a judge will decide whether to appoint an attorney depending on the circumstances of the case.  Even if the court decides to appoint an attorney, the attorney cannot be forced to accept the appointment.  You may call the Lawyer Referral Service of the State Bar of Texas at (800) 252-9690 for assistance in securing the services of a private attorney to represent you for a fee.

5. **Initial Case Review** - If the Court grants leave to proceed *in forma pauperis*, service of process will be withheld pending review of your complaint, and your complaint may be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

6. **Copies to Defendant** - After a defendant has been served your complaint in compliance with FRCP 4, you must serve a copy of any other document you file upon the defendant's attorney (or upon the defendant, if the defendant is *pro se*) as required by FRCP 5. If you and the opposing side are both ECF users, the ECF system will complete service for you, and a Certificate of Service is not required. If either of you is not an ECF user, or if you learn that service sent through ECF did not reach the person, you must serve the document by other means and include a Certificate of Service or file one within a reasonable time after service. Sample language for a Certificate of Service is:

   • On (Date) I filed (the "foregoing document" or Document Name) with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or *pro se* parties of record by a manner authorized by Federal Rules of Civil Procedure 5 (b)(2).

   Signature _____

7. **Discovery Materials** - Do not file discovery materials with the clerk.  If you file a motion to compel discovery, you may attach only the portions of discovery that are relevant to your motion.

8. **Questions About Your Case** - The court's website at www.txnd.uscourts.gov provides valuable information.  Do not write letters to the judge asking questions about your case - all communication with the judge should be through filings.  Do not write letters to the clerk asking for instructions on how to handle your case, since the clerk is prohibited from giving legal advice.